(No. 13349.—Reversed and remanded.)

NOYES F. WATERMAN, Appellant, *vs.* GEORGE E. HALL *et al.* Appellees.

*Opinion filed April 21, 1921—Rehearing denied June 8, 1921.*

1. BILLS OF REVIEW—*object of a bill of review.* A bill of review is in the nature of a writ of error, and its object is to have reviewed a decree in chancery rendered upon a former bill and to procure an alteration or reversal of the decree by another trial of the issues upon which the case was first submitted, and collateral equities or interests are not to be considered in determining whether the bill should be allowed.

2. SAME—*character of newly discovered evidence necessary to support bill of review.* On a petition for a bill of review on the ground of newly discovered evidence the new evidence must be such as relates to a matter in issue upon the hearing, and it must be of a positive and convincing character and not merely cumulative or for the purpose of impeachment.

3. SAME—*petition for bill of review, and the bill itself, should be supported by competent evidence.* A petition for a bill of review should be supported by affidavit of the petitioner, and the petition and the bill should be supported by competent evidence, and the facts to be testified to should be sworn to by the witnesses who are expected to testify.

4. SAME—*newly discovered evidence must be such as will probably produce a different result.* On a petition for leave to file a bill of review for newly discovered evidence the original findings of the court are not to be disputed or contested, but the question is whether the newly discovered facts will probably produce a different finding and a different decree.

5. WILLS—*bill to contest will is a chancery suit although governed by statute.* A bill to contest a will is a suit in chancery, and the fact that it is a statutory proceeding and that the statute directs that an issue at law be made up on the question whether the writing produced is the will of the testator, which is to be tried by jury, does not distinguish such a case from any other suit or proceeding in chancery in matters of procedure.

6. SAME—*bill of review will lie to review decree in proceeding to contest will.* The same procedure for a review of a decree in a will contest will obtain as in any other case in equity, and if upon a proper showing the bill is allowed to be filed a new trial may be had on the old bill, and the fact that the original bill was filed within the time required by the statute gives the court jurisdiction of the second trial.

. 7. SAME—*when a petition need not set out evidence heard on original trial.* A petition for leave to file a bill to review a decree in a will contest on the ground of newly discovered evidence need not set out the evidence heard on the original trial, but affidavits of the newly discovered evidence are necessary.

8. SAME—*when petition for bill of review should be allowed in will contest case.* Where a decree sustaining a will is based upon the supposition that the will was executed on its purported date and upon proof of the testator's mental competency at that time, a subsequent petition setting up new evidence showing that the will was not executed on that date but several years later, at a time when the testator was incompetent, should be allowed in order to review the decree and permit proof as to the actual time of execution of the will and the testator's mental condition at that time.

APPEAL from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, (DWIGHT P. GREEN, PERRY S. PATTERSON, and P. J. O'KEEFE, of counsel,) for appellant.

CUTTING, MORE & SIDLEY, and N. G. MOORE, for appellee the Moody Church.

Per CURIAM : The circuit court of Cook county denied the petition of appellant, Noyes F. Waterman, for leave to file a bill of review to review and reverse a decree of that court entered in the case of *Waterman* v. *Hall,* and which was later affirmed by this court in 291 Ill. 304. The petition was supported by affidavit and it was based upon the ground of newly discovered evidence. The petitioner seeks by this appeal to review the order of the court denying the petition.

No brief is filed by any appellee except the Chicago Avenue (or Moody) church.

The original proceeding was a bill filed by appellant as the sole heir-at-law of Arba N. Waterman, deceased, to contest the will of the latter and to set aside deeds from

Judge Waterman to Carleton Hudson purporting to have been executed and acknowledged in June, 1915, conveying substantially all the real estate Judge Waterman owned,—a large amount,—the consideration being Hudson's unsecured notes for $80,000, due in ten years, which the petition alleges are absolutely worthless. The issues raised by the pleadings in that proceeding were as to the sanity of the testator when he made the will, and also upon the further question whether or not Hudson had procured the execution of the will by the exercise of undue influence. The will admitted to probate was dated July 21, 1909, and the questions of mental incompetency of the testator and of undue influence were determined upon the supposition and the proof that the will was made on the day of its date, the two subscribing witnesses testifying in the probate court, without contradiction, that the will was executed on said date. A motion for new trial in the lower court was supported by the oral testimony of Sol Rubin before the court, to the effect that he saw the will executed and that it was executed in August, 1915, and not in July, 1909. Appellant had never had any intimation from Rubin or anyone else, until after the trial had been completed, that the will was not executed on the day of its date. This court in the foregoing decision sustained the lower court in overruling the motion for a new trial. Shortly after the motion for a new trial was overruled the petition for leave to file the bill of review was presented to the court. The petition and the bill clearly set forth the substance of the pleadings in the original cause as aforesaid, and disclose that the newly discovered evidence relied upon had never come to the knowledge of the complainant in the original bill or his solicitor and showed due diligence in seeking and gathering all evidence applicable to the case previous to the trial. They also set forth the findings of the court in the cause that the will in question was the will of the testator, and are duly verified by the petitioner.

There were two other affidavits setting forth newly dis-
covered evidence in support of the bill and filed with the
petition. One of these affidavits was made by Louis C.
Ehle, who is named in the alleged will of 1909 as execu-
tor. He declined to act as executor but acted as attor-
ney at law for the administrator and for the estate of the
testator and participated as an attorney in the trial of the
original contest of the will. In his affidavit he states the
following: He was associated with Carleton Hudson, a
defendant in the will contest, from 1914 to Arba N. Water-
man's death, and that they occupied the same suite of offices
in Chicago until May, 1919. He had not become well ac-
quainted with Waterman until about 1912 and was not fa-
miliar with his affairs or property and had not discussed
with him the making of a will. He did not know that a
will had been made by Waterman until the summer of
1915, after the filing in the probate court of Cook county
of a petition to have him adjudged incompetent and a con-
servator appointed for his estate. In the summer of 1915
Hudson informed him that he had been named as executor
in Waterman's will but did not state in what will he was
so named. While acting as attorney for the administrator
Hudson informed him that he suggested to Waterman the
naming of the Moody church as residuary legatee of the
will, to receive the bulk of Waterman's estate. He asked
affiant if he did not think that that church would be the
most favorable beneficiary he could suggest in view of Hud-
son's claim against Waterman's estate and other controver-
sies growing out of the execution and delivery to Hudson
of the deeds which Hudson had procured from Waterman.
He knows that Hudson had no controversies with Water-
man or his estate in 1909 which he could be seeking to ad-
just by a friendly beneficiary in Waterman's will, and that
no such controversies arose until 1915, when Hudson pro-
cured from Waterman deeds for property of the value of
$100,000 for Hudson's unsecured note for $80,000, payable

ten years after date.  Hudson had for more than ten years
been closely associated and on intimate terms with the most
active leaders of the Moody church.  He sold to the sis-
ter-in-law of Erwin Woolley, acting assistant pastor of the
church, certain notes of Caroline N. King totaling over
$11,000, payable to Hudson and indorsed by him.  He
also sold to the trustees of the fresh air fund of the Moody
church one or more of Mrs. King's notes payable to him-
self and by him indorsed, amounting to $10,000.  He pro-
cured the notes from Mrs. King fraudulently.  They have
never been paid and are now uncollectible.  Hudson gave the
holders of the notes certain notes of affiant as security for
Hudson's indorsement of the King notes, the latter notes
being given without consideration and which Hudson had
fraudulently negotiated by false representations to the ef-
fect that affiant was a person of large financial responsibil-
ity.  Hudson is insolvent and cannot meet his obligations
unless he procures by a favorable settlement some part of
the real estate of Waterman which he claims under the
Waterman deeds.  Upon several occasions Hudson "has in-
timated" to him that he had in his possession a revocation
of Waterman's will of 1909.  Prior to the original decree
he "admitted to affiant" that he had such a revocation, and
said that he could not admit it to the other attorneys for the
Moody church.  Hudson has several times since the death
of Waterman sought to make a settlement with Noyes F.
Waterman for a nominal sum and thereby obtain an assign-
ment of all of Waterman's right, title and interest in said
estate, and "intimated" that with such an assignment he
could drive a bargain with the Moody church for a settle-
ment of his claims under the Waterman deeds.  Waterman
from the summer of 1915 to the appointment of his con-
servator (December, 1915,) was completely under the con-
trol and domination of Hudson and would sign anything
and do anything that Hudson asked him to do.  He verily
believes that in the summer of 1915 and up to his death

Waterman was mentally incompetent and unable to make a valid will.

The other affidavit was made by Clara Hillman, the former stenographer in Hudson and Waterman's office from 1914 to 1916. Her affidavit contains the following facts which she swears are true and to which she testified in a certain case entitled, The People *vs.* Carleton Hudson and Julia Johnston, in the criminal court of Cook county in the summer of 1919: About August, 1915, Hudson asked her to make a copy of a will that he handed her, which was Judge Waterman's will. There were some corrections in pencil in the will that he handed her and the will was typewritten. The pencil changes were in Hudson's handwriting. The will was dated 1909. Hudson told her to put the date 1909 in the will, and she wrote the date "........ day of July, 1909." She wrote it with an Underwood typewriter. She ordinarily used an L. C. Smith machine but Hudson told her to use the Underwood. She gave the copy of the will to Hudson and also the original will. She saw the will next day in Hudson's hands and asked him if that was the will which she copied. He said, "No; this will dates back to 1909 and is signed by Judge Waterman." She said it looked like the will she wrote the day before and she thinks it was. She was shown the will which was contested and stated, "It looks very much like the document I wrote; I think it is." She stated that one thing that refreshed her recollection was, that on the second page of the will she wrote $250 was given to Kate O'Connor, housekeeper of Judge Waterman, while in the original will she was given $500. She remembered this fact because she thought she deserved the amount the first will gave her. She also stated that on page 3 of the will she wrote is mentioned the Chicago Avenue church and that it was not mentioned in the original will. She also stated that she did not examine the papers or will that Hudson had in his hand the next day after she wrote the

will. She could see them but she did not read them and did not have hold of them. She saw signatures on the will he had but did not remember how many signatures she saw on it. When he told her it was not the will she wrote he said, "This was signed in 1909; see?"

No affidavit of Sol Rubin embracing his testimony before the court in support of the motion for a new trial was presented in support of the bill or petition, but the petition alleges he testified the will was not executed the day it bears date but was executed in 1915. The bill of review is submitted as an exhibit to the petition. In the bill it is stated that Rubin testified in support of the motion for a new trial, and that his testimony is to the effect that the purported will dated July 21, 1909, was in fact executed by Judge Waterman in August, 1915, and that he was present when it was so executed.

A bill of review is in the nature of a writ of error, and its object, as indicated by its name, is to have reviewed a decree in chancery rendered upon a former bill and to procure an alteration or reversal of the decree by another trial of the issues upon which the case was first submitted. (Story's Eq. Pl. sec. 403; *Elzas* v. *Elzas,* 183 Ill. 132.) The newly discovered evidence must be such as relates to a matter in issue upon the hearing where the ground of the petition is for newly discovered evidence. The petition for the bill should be supported by affidavit of the petitioner, and it and the bill should also be supported by proper and competent evidence, and the facts to be testified to by witnesses should be sworn to by the witnesses who are expected to testify to them. The evidence must not be merely cumulative or of an impeaching character. (*Elzas* v. *Elzas, supra; Lewis* v. *Topsico,* 201 Ill. 320.) The original findings of the court are not to be disputed or contested, but the question is, will the newly discovered facts produce a different result or finding? (*Turner* v. *Berry,* 3 Gilm. 541.) The new facts to be proved are supposed to be en-

tirely new facts or new evidence of a positive and convincing character,—not merely cumulative or of an impeaching nature. This court, before reversing the order denying the right to file the bill should be able to say from the allegations of the bill and the offered testimony, that if true a different decree would in all probability result in the cause.

A bill to contest a will is a suit in chancery or in equity. The fact that it is a statutory proceeding and that the statute directs that an issue at law be. made up in such a case whether the writing produced be the will of the testator or not, and which shall be tried by jury, does not in any other respect distinguish such a case from any other suit or proceeding in chancery in matters of procedure. (*Stephens* v. *Collison,* 249 Ill. 225.) A bill for a divorce is also a suit in equity in which either party may have the right of a trial by jury. This court has held that a bill of review will lie in such cases upon a proper showing, and the case of *Elzas* v. *Elzas, supra,* is an instance of such a holding. We can see no reason for holding, as contended by appellee the Moody church, that a bill of review will not lie to review a decree in a will contest on a proper showing. The suit being in equity, the same procedure for a review of a decree in a will contest ought to obtain as in any other case in equity. If the petition for such a bill is allowed it simply means that the party so applying is entitled to a new trial on the old bill, and if that bill was filed within the time required by the statute the old bill gives the court jurisdiction for the second trial the same as for the first.

. Appellee the Moody church contends the record here presented is inadequate because it does not contain the evidence heard on the trial of the original cause. There were filed with the petition affidavits of the newly discovered evidence, except that of Rubin heard orally before the chancellor on the motion for a new trial. Appellant was not required to set out the evidence heard on the trial

of the original cause, but affidavits of the newly discovered testimony were necessary, and that was to be considered together with the evidence in the original case. *Elzas* v. *Elzas, supra; Turner* v. *Berry, supra; Aholtz* v. *Durfee,* 122 Ill. 286; *Buffington* v. *Harvey,* 95 U. S. 99.

The appellee church insists the newly discovered evidence raises a new and different issue from the issue tried in the original case, and leave to file the bill of review was properly denied for that reason. The bill in the original case was to contest the will of Judge Waterman admitted to probate and which bore date July 21, 1909, on the ground that he was mentally incompetent to make a will and that he was unduly influenced by Hudson. The appellee church also contends the newly discovered evidence would be incompetent because not on the issue involved in the original case. In a will contest the issue is whether the will produced is the will of the testator. Appellant had no knowledge of any evidence that the will was not, in fact, executed on the day of its date, and the case was tried on the supposition that it was so executed. On the trial the court limited the proof, in point of time, to January 1, 1912. If the will was not executed until July or August, 1915, but was dated back to 1909, a fraud was perpetrated on appellant and the court. It is true the bill did not allege the will was executed in 1915, because appellant had no knowledge of the alleged facts disclosed by the newly discovered testimony. On the question of the date of the execution of the will the only evidence was the certificate of the testimony of the witnesses to the will heard in the probate court,—Hudson and his employee, Miss Johnston. The cause of action and the issue were whether the will produced was Judge Waterman's will, and, as we have said, the case was tried on the supposition that the will was executed in 1909. It might have been a valid will if executed then and not have been the testator's will if executed in 1915. Mrs. Waterman, wife of the judge, died in March, 1915. Pro-

ceedings were begun in the probate court in August, 1915,
to adjudge Waterman a feeble-minded and distracted per-
son and for the appointment of a conservator of both his
person and property. In December following he was ad-
judged a feeble-minded, distracted person, and the Chicago
Title and Trust Company was appointed conservator of his
estate and Edwin A. Munger of his person. The Moody
church, residuary legatee, filed a cross-bill in the original
suit to set aside the deeds to Hudson for the same reasons
they were sought to be set aside by the original bill,—lack
of mental capacity of the grantor and undue influence of
the grantee. Upon motion of said appellee it was by the
decree in that case substituted as a complainant and author-
ized to prosecute the suit to set aside the deeds. Said ap-
pellee therefore agrees that in June, 1915, Judge Waterman
was mentally incompetent and under the influence of Hud-
son. The newly discovered evidence does not raise a new
issue but is of facts tending to show the will produced was
not the will of Judge Waterman. It is evidence of facts
not known to appellant before the trial of the original case.
Had it come to appellant's knowledge before the trial the
bill might properly have been amended and the amendment
would not have presented a new cause of action. *Sinnet*
v. *Bowman,* 151 Ill. 146; *Dowling* v. *Gilliland,* 275 id. 76.

Whatever may be said to discredit the affidavit of Ehle,
the newly discovered testimony of Clara Hillman seems
to us clear and convincing. It is criticised by the appellee
church and is said to be uncertain and contradictory, but
it does not so impress us. The chancellor who tried the
original case and heard and denied the petition for leave
to file the bill of review made an order in which he re-
cited that the evidence in support of the petition, except
that of Clara Hillman, was insufficient to justify granting
leave to file the bill; that if her testimony had been heard
in the original case the court would not have limited the
testimony in that case to January 1, 1912; that without

passing on the weight of her testimony or its sufficiency to change the result the court was of opinion an injustice had been done appellant, and for that reason the court would be disposed to grant leave to file the bill of review, but as the opposition contended her testimony would not be sufficient to change the result on another trial, and as it was further contended the court had no jurisdiction to open up the decree and a bill of review would not lie, and that the questions involved must necessarily reach and be dealt with by the Supreme Court, the chancellor was of the opinion that this would be facilitated by denying the petition, and it was accordingly denied.

The testimony of Clara Hillman embraced in her affidavit was given by her in the trial of the case of People *vs.* Hudson in the criminal court of Cook county. She was cross-examined at length and as abstracted her testimony covers more than ten pages. We have not attempted to set it out in full because of its length, but we see nothing in it to discredit it, and if it is true it would change the result on another trial. It may be, as the court held, that the testimony of Rubin and Ehle, alone, was not sufficient to justify leave to file the bill of review, but the court's order shows he did not so regard the affidavit of Clara Hillman. It cannot be denied that the testimony of Ehle and Rubin tends to corroborate her. If her testimony is true, a will executed in 1915 but purporting to have been executed in 1909 was produced and admitted to probate as the last will and testament of Judge Waterman. The truth of her testimony was not denied by counter-affidavits, which would have been permissible, (*Loth* v. *Loth,* 116 Mich. 634,) and unless there is inherent in it something to discredit her testimony or render it unworthy of belief it was amply sufficient to justify granting leave to file the bill. We do not see any such inconsistencies or contradictions in her testimony as would warrant us in saying it should not be believed. If it is true, then justice and fairness

require that the case should be again tried and appellant permitted to offer his newly discovered proof on the issue whether the will is the will of Judge Waterman. The · newly discovered testimony if true, and if on the trial it shall be believed, will disclose that the will was executed in 1915 and authorize testimony of Judge Waterman's mental condition at that time. We think the showing made on the petition for leave to file the bill was sufficient to require that leave be granted and the court erred in denying it. Collateral equities or interests are not to be considered in determining that question. It is a question of legal rights, only.

The decree is reversed and the cause remanded, with directions to grant leave to file the bill of review.

*Reversed and remanded, with directions.*