(No. 25246.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HOWARD DABBS, Appellant.

*Opinion filed October 13, 1939.*

HAROLD L. LEVY, and EDWARD M. KEATING, for appellant.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-
NEY, State's Attorney, and A. B. DENNIS, (EDWARD E.
WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and
BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed, in the criminal court of Cook county,
a motion in the nature of a writ of error *coram nobis* under
section 72 of the Civil Practice act, seeking to review and
set aside a judgment entered against him on a verdict of
guilty on trial of a charge of crime against nature. The
petition was denied and appellant seeks review here. The
original judgment of conviction was reviewed by this court
and affirmed. *People* v. *Dabbs,* 370 Ill. 378.

In substance, the petition here under consideration alleges
that on the trial on the original charge the verdict and
judgment were based upon the uncorroborated testimony
of one George Hughes, with whom, it was alleged, the
crime charged was committed. The indictment alleges the
crime to have been committed on April 8, 1937. Dabbs
was arrested the next day and this petition alleged that on
April 12, following, Hughes was examined by two psy-
chiatrists appointed by the municipal court at the instance
of the State's attorney. The petition alleges that these doc-
tors found Hughes to be a mental defective with delinquent
trends; that he had an intelligence quotient of 70 by one
test, and of 65 by another, which, the petitioner avers,
amounts to no more than a medium low grade moron. The
petition also alleges that within thirty days after the judg-
ment of conviction against Dabbs, while Hughes was still
under the control of the court, a petition was filed to have
Hughes adjudged a feeble-minded person and to have him
incarcerated; that the same two psychiatrists were ap-
pointed, examined Hughes and found him to be a feeble-
minded person, and recommended that he be committed,
which was done.

The petition charges that the State's attorney did not inform the petitioner nor the court which tried him, of the facts set forth in the petition, and that he did not know them until in January, 1939, and could not have ascertained those facts; that he did not suspect Hughes to be a feeble-minded person during the time he knew him in April and May, 1937, and that because the State's attorney concealed those facts, such concealment amounted to a fraud upon the court and a deprivation of the petitioner's liberty without due process of law, contrary to State and Federal constitutions. The petition avers that if the court had known the facts it would have held Hughes to have been an incompetent witness to testify against petitioner, and as there was no other testimony, the petitioner would have been discharged.

No written answer was filed to this petition by the State's attorney, who stated that he would answer it orally during the hearing. Counsel for Dabbs say that the State's attorney admitted the statements made in the petition. The record shows that prior to the beginning of the taking of testimony, counsel for Dabbs asked the assistant State's attorney if he had any question about the allegations of the first two paragraphs of the petition, to which the assistant State's attorney replied: "No, I told you yesterday I do not question your whole petition." Counsel for the People say that this amounted to an admission of the facts stated in the petition but not the conclusions drawn therefrom, or charges made in the petition, and that is correct. The State's attorney, during the course of the hearing on this petition, offered testimony tending to show that one found to have an intelligence quotient of 70, as disclosed by the testimony and reports made of Hughes, has sufficient intelligence to testify in a proceeding such as was brought against Dabbs. Neither of the physicians presented by Dabbs on the hearing on this petition gave an opinion that Hughes was incompetent to testify and all agreed that in

the case of Hughes an intelligence quotient of 70 gave him an intelligence age of something over eleven years.

Appellant comes directly to this court on the ground that a constitutional question is presented, in that the facts set forth in this petition show a fraud which deprived him of his liberty without due process of law. They say, also, that Hughes was a feeble-minded person at the time of the trial and incapable of understanding the nature of any criminal accusation against him, and was therefore incapable of incriminating any one else and his testimony was incompetent.

Counsel for the People argue, first, that a defendant may not have a review under section 72 of the Civil Practice act where this court has affirmed a conviction. They also contend that no fraud was practiced and that the testimony of Hughes was not incompetent.

Section 72 of the Civil Practice act (Ill. Rev. Stat. 1937, chap. 110, par. 196) abolishes the writ of error *coram nobis* and provides that: "All errors in fact, committed in the proceedings of any court of record, and which, by the common law could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice." This section also excludes from the period of limitation such time as the person entitled to make the motion may be an infant, *non compos mentis* or under duress.

The question whether such motion may, under section 72 of the Civil Practice act, be first filed in the trial court rendering the judgment, where the judgment of conviction had been affirmed by this court, is new in this State. The People argue that this appeal should be dismissed because a criminal court lacks jurisdiction to review and examine the proceedings of this court, and to annul or interfere with its judgment by motion under said section 72. They

cite, in support of this contention, *People* v. *Superior Court*, 234 Ill. 186, and *People* v. *Circuit Court of Will County*, 369 id. 438. Those were *habeas corpus* cases heard by circuit courts and writs awarded. The question raised was the sufficiency of the judgment of conviction which had been affirmed by this court, and it was held that when this court, in the exercise of its appellate jurisdiction, has determined the validity of a judgment of conviction, judges of circuit and superior courts are bound by that judgment and lack power or authority to pass upon its validity by *habeas corpus* or otherwise. The People also cite *Partlow* v. *State*, 141 N. E. (Ind.) 513. In that case a petition was filed in the trial court for writ of error *coram nobis* after affirmance of the original conviction by the Supreme Court of that State. The petition was based upon an affidavit that a witness for the State had, after the trial, made an affidavit that the testimony given by him and another witness was perjured testimony. The petition for writ of error was denied in the trial court, and on appeal therefrom the Supreme Court of that State dismissed the appeal on the ground that the sole recognition given the writ in Indiana was by virtue of the adoption of the common law, where such was not in conflict with any organic or statutory law of that State; and that the courts of Indiana must be governed by precedents established by the courts of England in relation to that writ, and that as those courts, as early as 1787, held that the writ will not lie after affirmance by the exchequer chamber it would not lie in Indiana after an affirmance of a judgment by the Supreme Court.

A Federal and a State court have held that the Supreme Court having affirmed a judgment, the trial court is under duty to execute the mandate, and before attacking such judgment on *coram nobis* leave must be given by the reviewing court. (*Strong* v. *United States,* 53 Fed. (2d) 820; *Chambers* v. *State,* 158 So. (Fla.) 153.) On the other hand, it was held in *Buckler* v. *State,* 161 So. (Miss.) 683, that since the judgment of the Supreme Court affirming the

judgment of conviction in the trial court amounted to a ratification of what had been correctly done, and a petition for writ of error *coram nobis* did not seek to attack the judgment but to show a mistake of fact, unknown to the defendant at the trial, and which, if known to the court, would have prevented the judgment, such petition for writ may be allowed and heard in the trial court as fully and to like effect as if no appeal had been taken, and that application is properly made to the trial court in the first instance.

It will be noted that under the provisions of section 72 of the Civil Practice act, errors of fact may be corrected by the court in which the error was committed, upon a motion made at any time within five years after rendition of final judgment in the case, upon reasonable notice. It cannot be doubted that the statute contemplates the filing of the petition in the first instance in the court which heard the trial of the cause. Such motion or petition is the filing of a new suit and is civil in its nature. (*People* v. *Green,* 355 Ill. 468.) It is not an attack upon the judgment, such as was considered by this court in *People* v. *Superior Court, supra,* and *People* v. *Circuit Court of Will County, supra.* This proceeding is not unlike a bill of review to have reviewed a decree in chancery. A bill of review is in the nature of a writ of error and seeks the reconsideration of the decree. The original finding of the court is not disputed or contested but the bill proceeds on the theory that newly discovered facts would produce a different decree. In *Waterman* v. *Hall,* 298 Ill. 75, this court reversed the order of the trial court denying leave to file a bill for review of a decree which had been affirmed by this court. While the precise question as to the power of the trial court to entertain such a petition, after affirmance of the decree, was not argued, the reason for the rule in that case, and similarity of purpose, show the cases to be analogous.

The statute confers on this court no original jurisdiction of *coram nobis* or to grant or deny leave to file a motion in the nature of writ of error *coram nobis* in the trial

court, and as the proceeding does not constitute an attack on the judgment of this court it does not come within the inherent power of this court to protect its appellate jurisdiction. On the other hand, the statute contemplates the petition shall, as we have said, in the first instance be filed in the trial court. A motion in the nature of writ of error *coram nobis* is an appropriate remedy in criminal cases as well as civil and lies to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance of the accused and without negligence on his part, he has been deprived of a defense which he could have used on his trial, and which, if known to the court, would have prevented conviction. *People* v. *Green, supra; People* v. *Crooks,* 326 Ill. 266.

The statute granting the remedy places the limitation upon it at five years. It in nowise expressly or by implication requires, in a case where the original judgment has been affirmed, that the consent of the reviewing court be first had. To hold such consent necessary would be to render the provisions of this section of the Civil Practice act repugnant to those provisions of the statute fixing time limitations for review of judgments in other cases, and the effect would be to definitely curtail the period of limitation fixed by section 72 of the Civil Practice act, and that without any express or implied intention in the statutes so to do. An appellant, under such a construction, must file his motion before final review to insure its consideration by the court. The statute on reviews does not give five years for appeal.

In the early case of *Mains* v. *Cosner,* 67 Ill. 536, a petition to set aside the judgment entered was filed on behalf of defendant on the ground that he was an infant and had no guardian *ad litem.* The motion in that case was filed prior to July 1, 1872, when the act corresponding to section 72 of our Civil Practice act went into effect. This court referred to the rule of English courts that a writ of

error *coram nobis* would not lie after affirmance by an appellate court, and stated that no reason was perceived why the same rule should not govern. We are of the opinion that such cannot be said under the present act which gives a definite period of five years in which to file the motion in the court which heard the case.

For these reasons, and for the reason that the petition in this case is not an attack upon the judgment affirmed by this court, the People's contention as to jurisdiction of the trial court cannot be sustained.

We come then to a consideration of appellant's contention, first, that he was fraudulently deprived of his liberty by failure of the State's attorney to inform the court that Hughes was feeble-minded, and therefore an incompetent witness against the defendant. The petition sets up that shortly after the arrest of Dabbs and before his indictment, an inquiry was made, at the suggestion of the State's attorney, as to the mental competency of Hughes. The record discloses an examination by two competent physicians, using what is known as the Otis test and the Benet test, with the result, as we have seen, of an intelligence age of something over eleven years. These doctors were appointed by the municipal court where the inquiry as to Hughes' competency was being conducted, in April, 1937, after Dabbs' arrest and before he was indicted. The diagnosis then given by these doctors, as shown by the record in this case, is as follows: "A diagnosis of Borderline intelligence. No evidence of a committable psychosis or constitutional psychopatia sexualis was made and he is accordingly returned to your court for disposition. The following is recommended: No specific psychiatric recommendation." It can scarcely be said that had the court, trying the charges against Dabbs, been informed of these proceedings, it would have held Hughes incompetent to testify. It may also be observed that the inquiry took place in a court of record and defendant must be held to have had at least constructive notice

of it. The examination and report of these physicians tend to establish that Hughes had the intelligence of an eleven-year-old boy. It is not contended that a boy of eleven years would not be competent to testify. Nor do the physicians who made the tests in the municipal court say, on their examination in this record, that in their opinion the result of those tests showed Hughes was not competent as a witness. There is, on the other hand, positive testimony of a psychiatrist offered on behalf of the People on this hearing, that an eleven-year-old boy is mentally competent to testify in a lawsuit.

But, counsel for Dabbs say, on December 10, thirty days after the judgment was entered in the criminal court, Hughes was committed to Dixon as feeble-minded, and that since the statute relating to feeble-mindedness contemplates a condition arising at birth, he must be now held to have been feeble-minded when he testified, and so incompetent. The record in this case shows that Hughes' father, after Dabbs was convicted, filed a petition to have Hughes declared feeble-minded and committed, giving as reasons that he had been arrested twice for delinquency, once as a "Peeping Tom" and the other relating to a sexual offense, evidently the Dabbs case. The same physicians who examined him in the previous proceedings in April, were appointed as commissioners. There is no evidence of what further examination or tests they applied or that further tests were applied. They reported finding a diagnosis of mental defective middle grade level with delinquent trends and recommended that he be committed to the Dixon State School and Colony for Feeble-minded. An order of the municipal court was entered accordingly.

The effect of such a report of the psychiatrists and order of the municipal court entered on December 12, could scarcely be considered as tending to show fraud on the part of the State's attorney in offering Hughes as a witness.

The record shows, on the contrary, that the State's attorney used precaution to determine whether he would be competent before offering him as a witness. There is no evidence of fraud on his part and the conviction of Dabbs was not procured by fraud, for, as we have said, had the trial court known of the proceedings in the municipal court in April, 1937, it could not have held him incompetent as a witness. Nor is the fact that Hughes was, on December 10, committed to Dixon as a feeble-minded person, sufficient to show him incompetent as a witness at the time of the trial against Dabbs. It is evident from the testimony of the psychiatrists, who recommended the commitment of Hughes to Dixon, that they were moved to make such recommendation principally by reason of his delinquent tendencies. We have reexamined the abstract of evidence on the original trial against Dabbs, which constitutes a part of the files of this court, and are convinced that the long examination in chief, cross-examinations, re-direct and re-cross of Hughes, disclose nothing to indicate that he was incompetent as a witness.

For the reasons herein given we are of the opinion that no fraud was exercised in using Hughes as a witness and, therefore, appellant's constitutional rights of due process were not violated, and had the trial court, on the trial against Dabbs, been informed of all that had taken place pertaining to inquiry as to Hughes' mental competency, it would not have been justified in holding Hughes incompetent as a witness. Therefore it was not error on the part of the trial court to deny the motion and petition in this case, and its judgment is affirmed. *Judgment affirmed.*