THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTIN HAMMERS, JR., Defendant-Appellant.

Fourth District   No. 13746

Opinion filed May 31, 1977.—Rehearing denied June 29, 1977.

1024

TRAPP, J. specially concurring.

Robert D. Owen and W. Scott Murphy, both of Owen, Roberts, Susler & Taylor, of Decatur, for appellant.

Edwin R. Parkinson, State's Attorney, of Jacksonville (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
On November 1, 1973, after a trial by jury in the Circuit Court of Morgan County, defendant Martin Hammers was convicted of the July 10, 1973, murder of Rose Ann Charapata. He was sentenced to 50 to 150 years imprisonment. Upon direct appeal, we affirmed the conviction and sentence in *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471. On February 25, 1975, defendant filed in the trial court a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72) requesting that he be granted a new trial. After a hearing on the merits, relief upon that petition was denied. He appeals.

The petition alleged that: (a) defendant did not testify at trial, and testified incompletely at sentencing, because of fear for his safety and that of others close to him including one who subsequently became his wife; (b) Lanier "Bubba" Watts, and not defendant, killed Ms. Charapata; (c) defendant did not assist in the killing; (d) subsequent to defendant's sentencing, Watts told several persons that he killed the victim; and (e) if the foregoing information had been presented to the jury, defendant

would not have been convicted. Section 72 is described by its drafters as prescribing "one simple but comprehensive procedure, applicable alike to law, equity and statutory proceedings, by which after 30 days a litigant may seek to be relieved from a final judgment or decree for reasons that supported a motion under section 72 of the former act, a bill of review, a bill in the nature of a bill of review, other remedies which are abolished by this revised section, or otherwise." Ill. Ann. Stat., ch. 110, par. 72, Joint Committee Comments, at 286 (Smith-Hurd 1968).

The relief available under section 72 of the former act was principally that available at common law pursuant to a writ of error coram nobis. In *People v. Touhy* (1947), 397 Ill. 19, 25, 72 N.E.2d 827, 831, the court stated:

"The statutory substitute, namely, a petition or motion in the nature of a writ of error *coram nobis* has been adjudged an appropriate remedy in criminal cases, as well as civil, and lies to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance of the accused and without negligence on his part, he has been deprived of a defense which he could have used on his trial, and which, if known to the court, would have prevented conviction. *(People v. Dabbs,* 372 Ill. 160; *People v. Green* 355 Ill. 468.)"

In *People v. Colletti* (1971), 48 Ill. 2d 135, 138, 268 N.E.2d 397, 399, the supreme court again stated that relief under section 72 upon the grounds of a "fraudulently caused omission to interpose a valid defense is available only in the absence of negligence on the part of the defendants." In the instant case, the trial judge filed a memorandum explaining his ruling on the petition. He stated that he denied the relief requested because he found defendant to have been negligent in not presenting at trial the defense that Watts was the killer.

To understand the significance of the testimony at the hearing on the petition, it must be considered in light of the evidence at trial as summarized in our opinion of direct appeal. At the hearing, defendant testified as follows. He and Watts were together on the evening of the crime and went to Anna Davis' house on bicycles. Each had a gun. After giving his gun to Watts, defendant went inside the house while Watts waited outside at the side of the house. Hammers talked to Anna Davis inside the house and during the conversation, she called his attention to a girl walking by. He then left the house, got on his bicycle and caught up to Watts who was then also riding away from the house on his bicycle. The two men then caught up with this girl. Watts was talking and walking along with her. He heard Watts invite her over to his house and she said she had to be going home. As they were walking, Watts put his arm around the girl and she pulled his arm off and started running. He

dropped his bike and caught up with her and the girl started hollering. Watts was slapping her with the gun. Watts told him to bring him his bike and he did so. He heard the girl say that she was going over to Watts' place. They then rode away with Watts and the girl on Watts' bike and defendant on the other. Watts told defendant he wanted to talk with the girl so defendant rode ahead.

Defendant stopped by a bridge and while waiting heard a noise and saw two flashes; he heard two more noises, along with the flashes. He saw Watts come running and get on his bike. Defendant took off. Watts caught up and told him to say nothing about what happened and defendant said he would not. Watts gave him his gun back and told him to shoot it, but defendant refused. They then parted company and defendant went home. It is implicit in defendant's version of the occurrence that he heard shots and must have known that Ms. Charapata was either wounded or killed yet he made no attempt to determine what had happened or whether she was merely wounded and needed assistance. He did nothing to either assist the victim or to bring the offender to justice.

Defendant admitted that he had not given the information that Watts was the killer to his trial counsel before or at trial. The reasons defendant gave for not testifying were varied. At one point he stated that he did not testify implicating Watts because he was afraid of him. Substantial evidence was introduced showing that Watts was a feared person. Defendant testified that prior to trial he heard that Watts had threatened to harm his child if he testified implicating Watts. At another point in his testimony, however, he said that he wanted to testify but that his counsel would not let him, thus negating the theory that fear prevented him from testifying. Also lessening the force of his claim that fear prevented him from testifying is the fact that at sentencing hearing, he testified indicating that Watts was the killer. He further admitted that he had not been completely truthful at sentencing. Defendant also admitted that he had attempted to get others to lie for him at trial.

Watts testified at the hearing denying that he was with defendant on the evening in question and denying that he killed Ms. Charapata. He also denied making the threats attributed to him.

Anna Davis had testified at trial that on the evening of the killing, after defendant had left her house, she looked out the window and saw defendant and a girl crossing the railroad tracks. At the hearing on the petition Cheryl Kroush testified that the morning after the killing Ms. Davis had told her that she saw two boys with the girl as she crossed the tracks. No explanation was given as to why Ms. Kroush was not called by the defense at trial.

Defendant's own testimony and that of Cheryl Kroush was available to defendant at trial but not used. At the hearing on the petition, defendant

also presented evidence that was newly discovered. Three persons testified that Watts had admitted to them after the trial that he had killed Ms. Charapata. Another admitted that he had made a statement that Watts had made such an admission to him but testified that he was lying when he made the statement. Marlow Johnson testified that he was in the house with Anna Davis, although in another room, when defendant arrived. Johnson stated that he saw an unidentified male at the side of the house and that after defendant left, he and Anna Davis both saw Watts and defendant with a girl crossing the railroad tracks. Anna Davis testified, denying that Johnson was present or that two males were seen with the girl.

The State contends that newly discovered evidence may not be considered as grounds in support of a section 72 petition. In *Touhy*, the supreme court ruled directly that neither under writ of error coram nobis nor its statutory substitute, section 72, may relief be granted for newly discovered evidence. After the 1947 *Touhy* ruling, the supreme court held in *Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 359, that when necessary to prevent injustice, courts should apply equitable principals. In 1955, section 72 was amended (1955 Ill. Laws 2238, §1) to codify *Ellman v. De Ruiter* and to provide that relief formerly available by the equitable remedy of bill of review became available under section 72. Relief for newly discovered evidence had been available pursuant to a bill of review (*Waterman v. Hall* (1921), 298 Ill. 75, 131 N.E. 145). In *Williams v. People* (1964), 31 Ill. 2d 516, 202 N.E.2d 468, and *People v. Colletti* (1971), 48 Ill. 2d 135, 268 N.E.2d 397; however, the supreme court stated that section 72 relief may not be granted on the grounds of newly discovered evidence.

■■ Petitioner points out that if newly discovered evidence is not a ground for relief under section 72, no such relief can be obtained on that ground by one convicted in a criminal case unless the issue is raised in a motion for new trial filed within 30 days after conviction (Ill. Rev. Stat. 1975, ch. 38, par. 116—1(b)). That this is the law is shown by the decision in *Colletti*. There a defendant sought to raise the issue in a broadly stated petition which was filed more than 2 years after the conviction. The court ruled that the allegations of newly discovered evidence did not establish a ground for relief under the Post-Conviction Hearing Act and that the petition was not filed in time to be considered as a post-trial motion or a section 72 petition. The opinion also stated that a further reason for denying section 72 relief was because newly discovered evidence was not a ground for relief under that section. In *People v. Freeman* (1974), 26 Ill. App. 3d 443, 326 N.E.2d 207, the appellate court affirmed a trial court's dismissal of a section 72 petition based upon newly discovered evidence citing *Touhy, Williams* and *Colletti*.

■■ The State is not shown to have been guilty of any fraud or duress that prevented the defendant from having this newly discovered evidence available at trial. Indeed the alleged admissions of Watts are newly discovered because they purportedly occurred after the trial. In view of the precedent binding upon us, we conclude that we cannot consider the newly discovered evidence in support of the petition.

Defendant maintains that the trial court's ruling that he is barred by negligence from presenting the claim that Watts was the killer penalizes him for exercising his fifth amendment privilege not to testify and deprives him of "fundamental fairness." Because of our ruling that newly discovered evidence need not be considered in support of the petition, we need consider only whether the failure to present the evidence of Watts and Cheryl Kroush occurred because of negligence. The parties agree that on review of a ruling upon a section 72 petition, we can overturn a factual finding of the trial court only if it is contrary to the manifest weight of the evidence.

■■ If we had before us the newly discovered evidence, the fifth amendment argument would present a difficult question. Under those circumstances, the question would be whether the fact that the defendant did not testify and reveal his contention that Watts was the killer could be used as a ground to bar him from now asserting the theory that Watts was the killer supported by the newly discovered evidence. Defendant's failure to present this evidence was in no way caused by his negligence. Because of our ruling, however, we have before us only the evidence known but not presented. The Kroush testimony was only impeaching of Anna Davis. Thus, the fifth amendment question in the existing posture of the instant case is whether a defendant can exercise his privilege not to testify at trial and then claim on a section 72 petition that he should have a new trial because had he testified, the result would have been different. Obviously he cannot do so.

■■ The ruling would be otherwise if the defendant was prevented from testifying because of fraud or duress. Defendant maintains that the ruling should also be for a new trial if "fundamental fairness" so requires. In support of that argument the defendant relies upon *People v. Hamby* (1965), 32 Ill. 2d 291, 205 N.E.2d 456, where the court ruled that "fundamental fairness" required that a defendant be permitted to raise upon post-conviction petition a point that could have been raised upon appeal but was not. The defendant there had asked that the point be raised on direct appeal but counsel had not done so. Here defendant testified that he wished to testify at trial but was prevented from doing so by his counsel. Defendant here also claims that he had no confidence in that counsel. We appreciate the difficulty in establishing rapport between white court-appointed counsel and a black defendant. However, the

defendant's testimony as to why he did not testify at trial was very contradictory. He admitted not telling his counsel what he now asserts to be the true story. Under this evidence, we do not find it to be contrary to the manifest weight of the evidence for the trial court to reject defendant's contentions and find that the failure of defendant to bring forth his theory of defense at trial was due to his negligence.

We affirm.

Affirmed.

MILLS, J., concurs.

Mr. JUSTICE TRAPP, specially concurring:

I concur in the conclusion of the principal opinion which affirms the finding of the trial court that defendant was guilty of negligence in failing to present his denial of guilt at trial, and that the relief sought is not available under the statute.

I do not agree with the implicit assumption of the opinion that this record presents newly discovered evidence. If defendant's testimony here is given credence it clearly demonstrates that the exculpatory facts asserted to exist were always known to him, albeit they were never presented to his counsel. By his present testimony defendant always knew that Watts did the killing. It can not be said that defendant was convicted "by some excusable mistake or ignorance of the accused and without negligence on his part * * * deprived of a defense which he could have used on his trial, and which, if known to the court, would have prevented conviction." *People v. Touhy* (1947), 397 Ill. 19, 25, 72 N.E.2d 827, 831.

This record discloses no "newly discovered evidence" which supports a defense made at trial. As disclosed in the opinion of this court affirming conviction, defendant undertook to present an alibi defense.

At the most, defendant purports to present some witnesses who might undertake to impeach Watts' denial of the murder with statements made at unspecified dates some period of time following the conviction of defendant. Neither the witnesses, Nikki Taylor nor Kathy Davis, testify to admissions by Watts of the killing, but rather as to threats against them which contained ambiguous references to the death of this victim. There is no showing of evidence admissible as the exception to the hearsay rule commonly known as a declaration against penal interest. Federal Rules of Evidence, Rule 804(b)(3), which we may consider as a standard, includes:

> "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

This record discloses no admissible evidence of such quality.

I do not agree with the implicit acceptance of defendant's argument that he is deprived of "fundamental fairness" as a penalty for the exercise of his fifth amendment privilege if denied relief in these proceedings. While ordinarily one assumes that a failure to testify represents the exercise of a claim of privilege in these proceedings, it is not now claimed that he was, in fact, doing so. The principal opinion notes defendant's testimony as to several contradictory reasons for not testifying. It is clear that if counsel did advise a claim of privilege it was in ignorance of defendant's present claim of a defense.

Assuming arguendo that defendant's failure to testify was by reason of a claim of privilege, as was said in *McGuatha v. California* (1971), 402 U.S. 183, 213, 28 L. Ed. 2d 711, 729, 91 S. Ct. 1454:

> "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. [Citation.] Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."

As pointed out, it has long been held that a defendant who takes the stand in his own behalf can not then claim the privilege against cross-examination. It is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify. So, in *Williams v. Florida* (1970), 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893, the court rejected the contention that a notice of alibi statute which required defendant to choose between abandoning an alibi defense or giving discovery to the State compelled the defendant to incriminate himself. If a motion at the close of the prosecution is denied, defendant must decide whether or not to put on a defense. It was said response to that kind of pressure by offering evidence or testimony is compelled self-incrimination. *McGautha v. California* (1971), 402 U.S. 183, 216, 28 L. Ed. 2d 711, 731, 91 S. Ct. 1454.