103 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jasper JOHNSON, Petitioner-Appellant,
v.
Jerry D. GILMORE, Respondent-Appellee.
 No. 94-2999.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 5, 1996.*
Decided Dec. 6, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 21, 1997.
 
 Before POSNER, Chief Judge, CUMMINGS and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Jasper Johnson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the petition, and Johnson appealed.
 
 
 2
 On August 2, 1974, Johnson was convicted of murdering his girlfriend, Dovie Tillman, in February 1972. Johnson was sentenced to 15-45 years imprisonment. He raised eight claims in his direct appeal: that (1) the trial court erred in amending the record on appeal; (2) the trial court erred in not allowing him to testify that he and Tillman were quarreling at the time Tillman was shot and that he had just told her he wanted to end their relationship; (3) the trial court erred in not allowing him to testify why he left Chicago immediately after Tillman's death; (4) the trial court erred in restricting his cross-examination of the decedent's mother; (5) the trial court erred in refusing to give an instruction regarding the defense of accident; (6) he was not proven guilty of murder beyond a reasonable doubt; (7) the trial court erred in allowing the prosecution to play twice a tape of his conversation with police when he reported the death; and (8) the prosecutor made improper closing arguments. People v. Johnson, 355 N.E.2d 699, 701 (Ill.Ct.App.1976). The appellate court affirmed his conviction, and the Supreme Court of Illinois denied his petition for leave to appeal.
 
 
 3
 In November 1976 Johnson brought a "Section 72" motion for relief from judgment. Ill.Rev.Stat. Ch. 110, p 72 (1976) (now superseded by 735 ILCS 5/2-1401). He asserted that a previously unknown witness had come forth to corroborate his version of the events leading to Tillman's death. An evidentiary hearing was held and the witness's testimony taken, but the Section 72 motion was dismissed for lack of jurisdiction.[1] The appeal of the dismissal was itself dismissed for failure to prosecute. In 1992 Johnson moved to vacate the appellate court's dismissal of that appeal, and he further appealed, unsuccessfully, to the Supreme Court of Illinois to reverse the dismissal of that motion to vacate. Finally, Johnson filed a petition for state post-conviction relief in 1992, alleging the denial of the effective assistance of counsel and denial of due process when the state courts refused to consider his new eyewitness testimony on the merits. The record does not show why the petition was denied (although Johnson notes that the court failed to reach the merits); that Johnson appealed that denial to the Supreme Court of Illinois; or, if he did so, what issues he raised before that court.
 
 
 4
 In his petition for a writ of habeas corpus, Johnson raised the eight issues he presented to the state appellate court in his direct appeal, and added issues from his Section 72 and state post-conviction proceedings, alleging (9) ineffective assistance of counsel regarding his Section 72 petition; (10) and (12) denial of due process from the state courts' refusal to entertain his new evidence on the merits; and (11) that he was denied his right to compulsory process for obtaining witnesses in his favor because the newly discovered evidence was never considered on its merits. On appeal, he alleges that the district court erred in denying his petition and in refusing to hold an evidentiary hearing.
 
 I. Procedural Issues
 
 5
 "Before a federal court will consider a petition for a writ of habeas corpus on its merit, the petitioner must (1) exhaust all remedies available in state courts (28 U.S.C. § 2254(b)(1)(A)), and (2) fairly present any federal claims in state court first, or risk procedural default (Picard v. Connor, 404 U.S. 270, 275 (1971); Verdin v. O'Leary, 972 F.2d 1467, 1472-73 (7th Cir.1992))." Bocian v. Godinez, No. 95-3664, slip op. at 5 (7th Cir. Nov. 21, 1996). It is clear that Johnson has exhausted his state remedies, but the issue of procedural default remains.
 
 
 6
 "Federal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim, when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a 'fundamental miscarriage of justice.' " Steward v. Gilmore, 80 F.3d 1205, 1211 (7th Cir.1996). "Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." Hogan v. McBride, 74 F.3d 144, 146 (7th Cir.1996). In Illinois, to avoid procedural default both direct appeals and petitions for post-conviction relief must be appealed all the way to the Supreme Court of Illinois. Cawley v. DeTella, 71 F.3d 691, 694 (7th Cir.1995); Jenkins v. Gramley, 8 F.3d 505, 508 (7th Cir.1993); cf. Hogan, 74 F.3d at 146 (Indiana law).
 
 
 7
 On direct appeal, Johnson raised eight issues in the appellate court but only raised issues 2 and 3 in his petition for leave to appeal to the Supreme Court of Illinois.[2] Thus, issues 1, 4, 5, 6, 7, and 8 are procedurally defaulted.
 
 
 8
 Issues 9-12 arose after the direct trial proceeding but were addressed in Johnson's Section 72 motion and in his state post-conviction proceeding.[3] Johnson asserts that he presented his Section 72 issues to the state trial, appellate, and supreme courts. The record reveals that Johnson's original Section 72 appeal was dismissed for failure to prosecute in 1977. Fifteen years later, in 1992, he filed a motion to vacate that judgment and appealed the denial of the motion to vacate to the Supreme Court of Illinois. We do not believe that this untimely action constitutes presentment to the state courts. See Cawley, 71 F.3d at 695 n. 8 ("The fact that Cawley eventually filed a motion for leave to file a late petition to the Illinois Supreme Court, which was denied, does not change our analysis. The considerations of comity and federalism that underlie our procedural default doctrine include respect for a state's appeal deadlines."). Further, we note that under the Illinois law applicable in 1976-77, Johnson's claims were appropriately brought only in a post-conviction proceeding, not a Section 72 motion. People v. Colletti, 268 N.E.2d 397, 399 (Ill.1971); People v. Hammers, 363 N.E.2d 914, 917 (Ill.Ct.App.1977). Johnson did initiate such a proceeding in 1992, but he has not shown this court that he appealed or what issues he raised during the appeal process. Thus, he has defaulted claims 9-12. Cawley, 71 F.3d at 694-95; Jenkins, 8 F.3d at 508.
 
 
 9
 Johnson may avoid these defaults and we may reach the merits of his claims if he shows cause for and prejudice from the failure to raise them earlier, or that a "fundamental miscarriage of justice" would result from our failure to hear the claims. "The fundamental miscarriage of justice exception requires a claim that the defendant be actually innocent of the crime for which he or she is imprisoned." Steward, 80 F.3d at 1212 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). "Actual innocence" requires that a petitioner show by clear and convincing evidence that, but for constitutional error, he would have been acquitted. Sawyer, 505 U.S. at 336; Kuhlmann v. Wilson, 477 U.S. 436, 454-55 n. 17 (1986).
 
 
 10
 Johnson has presented evidence discovered after his trial which he states will show that he is actually innocent of Tillman's murder. According to Johnson, the fatal shooting was an accident. He claims that he and Tillman were sitting in his car in front of Tillman's house arguing, that he told Tillman he had written her a letter, which was in the glove compartment, and that the letter said he wanted to break up with her. Tillman reached into the glove compartment, but instead of removing the letter, she removed the gun which Johnson kept there. She pointed it at Johnson; Johnson struggled with her; the gun fired and Tillman was struck in the head by a bullet. Thus, he claims, he was innocent of murder because he lacked the necessary intent.
 
 
 11
 Just over two years after Johnson's trial, a witness stepped forward and testified under oath that he had seen a man and a woman in a car on the day of the shooting, that the woman held a gun pointed toward the man, that the man began to reach for the gun, and that as the witness quickened his pace and passed the car, he heard a shot. Johnson presents this witness's testimony as corroboration of Johnson's trial testimony and proof that he was actually innocent of murder. This testimony, however, is not "clear and convincing" evidence that the jury would have acquitted Johnson of murder had the witness testified at trial. For instance, the testimony corroborates Johnson's story about the initial circumstances of the encounter between Johnson and Tillman, but the witness did not see the circumstances surrounding the shooting itself. The transcript, in fact, tends to indicate that the witness took pains not to look, because he quickened his pace to reach the corner and did not turn around when he heard the shot. When he reached the corner, he turned and saw the car leaving. Even assuming that the jury credited the witness's testimony, it still could have found that Johnson deliberately shot Tillman after disarming her, or that Johnson's grossly reckless handling of the gun caused Tillman's death. Thus, this newly discovered evidence is insufficient to show a fundamental miscarriage of justice and avoid Johnson's procedural default.[4]
 
 
 12
 Moreover, Johnson cannot show cause for the default. He alleges ineffective assistance of counsel, in that counsel did not amend his Section 72 motion and make it a petition for post-conviction relief. Because there is no right to counsel in post-conviction proceedings, however, Johnson may not rely upon counsel's failure to file a post-conviction petition as cause. See Lostutter v. Peters, 50 F.3d 392, 396 (7th Cir.), cert. denied, 116 S.Ct. 130 (1995); 28 U.S.C. § 2254(I) (1996). If Johnson means to allege ineffective assistance on direct appeal, Johnson himself defaulted the claim by failing to appeal the denial of his petition for post-conviction relief. See Lemons v. O'Sullivan, 54 F.3d 357, 360 (7th Cir.) ("Before a state prisoner can use ineffective assistance of counsel as cause for a procedural default, he must first present this claim as an independent claim to the state courts either on direct appeal or in post-conviction proceedings."), cert. denied, 116 S.Ct. 528 (1995); Lostutter, 50 F.3d at 396. Johnson's claims 1 and 4-12 are not subject to federal habeas review.
 
 II. Merits
 
 13
 Johnson did present issues 2 and 3 to the Supreme Court of Illinois in a timely manner, and thus these issues are properly before this court. In issue 2, Johnson alleges that the trial court erred in prohibiting him from testifying that he and Tillman were quarreling before the fatal shooting, making it more believable that she pulled his gun from the glove compartment and pointed it at him. In issue 3, he contends that the trial court again erred when it refused to allow him to testify that he went to Arkansas after the shooting to take counsel from a minister with whom he had done missionary work, rather than attempting to flee and avoid the consequences of his crime. In both of these instances, he argues, he was prohibited from fully presenting his defense of accident and thus denied his rights to the due process of law. The Illinois appellate court determined that the trial court had erred in restricting Johnson's testimony regarding his version of the events. It further found, however, that the errors were harmless. Johnson's theory of defense was presented to the jury through counsel's arguments and Johnson's testimony "clearly established the incident was an accident." People v. Johnson, 355 N.E.2d at 706. Additionally, the state appellate court noted that Johnson testified that he went to Little Rock and sought the minister. Id.[5]
 
 
 14
 The Supreme Court recently reiterated that the harmless error standard enunciated in Kotteakos v. United States, 328 U.S. 750 (1946), applies to federal habeas review of "trial errors." California v. Roy, 65 U.S.L.W. 3338, 3339 (U.S. Nov. 4, 1996) (per curiam). The Kotteakos standard requires this court to determine "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos, 328 U.S. at 776).
 
 
 15
 The erroneous restrictions, however, could not have had such an effect on the jury's verdict. The jury heard Johnson's theory of the case in counsel's opening and closing arguments, and Johnson's testimony familiarized it with the basic elements of Johnson's defense, although that testimony lacked the detail Johnson wished to add. Additionally, much of the evidence presented at trial pointed to Johnson's guilt. For example, the state presented evidence that showed Johnson had threatened Tillman; that he had choked her once and had appeared in front of her house with a gun; that Johnson's testimony about his actions (that he put Tillman's body on his bed fully clothed under the covers and left the gun on his TV) did not fit the scene discovered by police in his apartment (Tillman's body underneath the covers was naked from the chest down, and there was no gun), and was inconsistent with some of Johnson's prior statements; that Tillman was shot in the left temple, although Johnson testified she held the gun in her right hand and he grabbed her right wrist with his left hand as he was sitting behind the steering wheel of his car; that there was no letter in the glove compartment; and that Johnson drove away from Tillman's house with her body and made no attempt to get medical aid. In these circumstances, we believe that the restrictions on Johnson's testimony did not violate Johnson's right to due process by denying him a fundamentally fair trial. Milone v. Camp, 22 F.3d 693, 702 (7th Cir.1994), cert. denied, 115 S.Ct. 720 (1995); see also Montana v. Egelhoff, 116 S.Ct. 2013, 2017 (1996) (plurality opinion) (Due Process Clause does not guarantee the right to introduce all relevant evidence). Finally, Johnson's newly discovered evidence is not "so compelling that it would be a violation of the 'fundamental fairness embodied in the Due Process Clause' not to afford [him] a new trial at which the evidence could be considered." Coogan v. McCaughtry, 958 F.2d 793, 801, 804 (7th Cir.), cert. denied, 506 U.S. 986 (1992).
 
 
 16
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the petitioner's request for oral argument is denied and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Although the record on appeal does not make clear why the motion was dismissed, it is undisputed that the motion was untimely. Further, it appears that the relief Johnson sought was not available via a Section 72 motion. People v. Colletti, 268 N.E.2d 397, 399 (Ill.1971); People v. Hammers, 363 N.E.2d 914, 917 (Ill.Ct.App.1977)
 
 
 [2]
 Johnson asserts that every issue has been appealed to the Supreme Court of Illinois, but the record on appeal contains only one petition for leave to appeal during Johnson's direct appeal. That petition addresses only issues 2 and 3
 
 
 [3]
 The discussion of the state post-conviction proceeding is based upon Johnson's statements in his district court petition and his appellate brief, as no filings related to that proceeding are included in the record on appeal
 
 
 [4]
 Johnson further argues (characterizing the problem as the denial of his right to compel witnesses in his defense) that this newly discovered evidence should itself support the issuance of a writ of habeas corpus. Under Supreme Court precedent, however, newly discovered evidence (including the testimony of previously unknown witnesses) may only provide the means for a federal court to review otherwise defaulted claims, not constitute the basis for the granting of the writ. Herrera v. Collins, 506 U.S. 390, 404-05 (1993); Milone v. Camp, 22 F.3d 693, 700 (7th Cir.1994), cert. denied, 115 S.Ct. 720 (1995)
 
 
 [5]
 The record shows that Johnson did testify that he sought a certain person who resided in Little Rock, and that he did not get to see him. The jury was instructed to disregard references to Johnson's purpose in going to Little Rock