(No. 31938.—

GLEN R. THOMPSON, Appellant, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Appellee.

*Opinion filed November 27, 1951.*

G. W. HORSLEY, and TEMPLEMAN & TEMPLEMAN, both of Springfield, for appellant.

IVAN A. ELLIOTT, Attorney General, and GEORGE P. COUTRAKON, State's Attorney, both of Springfield, (ROBERT B. OXTOBY, LAWRENCE SWINYER, and HARRY L. PATE, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Appellant filed his petition in the nature of a writ of error *coram nobis* in the county court of Sangamon County, seeking vacation of a judgment of conviction of the crime of keeping a house of ill fame, resulting from a jury trial had on April 28, 1948. Appellant was tried under an information originally filed on February 26, 1947, was found guilty and sentenced to a term of one year at the State Farm at Vandalia. He appealed this conviction and the Appellate Court reversed and remanded the cause for a new trial. He was again tried and convicted, and that conviction was affirmed by the Appellate Court. On a writ of error to this court we affirmed the judgment. (*People* v. *Thompson,* 406 Ill. 323.) The matter here raised was not there presented.

The petition now before us, filed December 14, 1950, seeks vacation of the second judgment of conviction. The allegations upon which the instant petition is based are substantially the following: On the first trial appellant introduced two witnesses, Charles L. Bates and Charles Thomas, who testified that appellant did not own or operate the alleged house of ill fame and had no connection with it. On April 17, 1948, which was eleven days prior to the second trial, appellant caused subpoenas to issue for Bates and Thomas, which subpoenas were duly delivered to the sheriff of Sangamon County, who returned them marked "C. Bates not found in my county this April 26, 1948," and "C. Thomas not found in my county April 28, 1948." On the day of the trial appellant appeared and, for the first time, discovered Bates and Thomas were not under subpoena. He moved for a continuance, alleging the materiality of their testimony and that they would return and be available as witnesses within a reasonable time. It further appears that this motion for a continuance was denied on the ground of lack of due diligence, and that

the trial proceeded to the conviction here sought to be set aside.

The instant petition alleges that, unknown to appellant, the sheriff, after the subpoenas were in his hands, had conversations with Bates and Thomas, but failed to serve them; that the sheriff and State's Attorney threatened them and indicated they should get out of town and stay out until after the trial. The petition further alleges that appellant had no knowledge of these facts until after it was too late to incorporate them in that proceeding in the trial. Attached to this petition is the affidavit of Charles L. Bates which, as to the allegations of the petition concerning him, tends to support the petition.

The People answered alleging that on the trial the question of the witnesses' failure to appear was heard, and that appellant then professed knowledge of their whereabouts and that they would be available within a reasonable time; that nothing is alleged in this petition that was not presented and passed on by the trial court, and that the petition here does not present a ground for a writ of error *coram nobis.*

It must be observed at this point that the answer does not deny the alleged conduct of the sheriff and State's Attorney. At the trial, and before judgment, the People moved to amend their answer to deny the alleged misconduct. The motion to amend was denied. Appellant moved to strike paragraphs 4 and 5 of the answer which alleged that the matters here raised were before the court on the trial. The motion to strike was likewise denied. The petition, after hearing, was denied, and this appeal followed, alleging that constitutional questions are involved.

The appellant contends that the alleged misconduct of the sheriff and State's Attorney in suppressing evidence favorable to him, the failure to serve the subpoenas, and threatening his witnesses, causing them to leave town, constituted a denial of due process as guaranteed him by both

the State and Federal constitutions. He further contends that the acts of the officers which constituted the suppression of the evidence were not known to him until after he had presented his motion for a new trial, that therefore he could not raise this question on appeal, and consequently this petition in the nature of a writ of error *coram nobis* is his proper and only remedy.

The first question thus presented is whether the allegations of the petition present a fairly debatable constitutional question to give this court jurisdiction. If such question is raised this court will take jurisdiction even though the offense is only a misdemeanor. *People* v. *Humphreys,* 353 Ill. 340; *People* v. *McGurn,* 341 Ill. 632.

Article II of the Illinois constitution of 1870 guarantees that no person shall be deprived of life, liberty or property, without due process of law and, in pursuance of that guarantee, further provides that in all criminal prosecutions the accused shall have process to compel the attendance of witnesses in his behalf. There can be no doubt that any affirmative intervention by officers of the law substantially depriving an accused of the benefit of those guarantees constitutes a deprivation of his constitutional rights. The petition here alleges that the sheriff wilfully failed to serve the subpoenas, made false returns thereon, and that the sheriff and State's Attorney threatened the witnesses and caused them to absent themselves from the jurisdiction of the court until after his trial was over. It appears that they were competent witnesses and that their testimony was material. Whether the jury would have believed them is a matter of conjecture and is beside the point here. If the allegations of the petition are established, the appellant has been deprived of his right to compulsory process to compel their attendance by the misconduct of the officers. This, in our opinion, would constitute a violation of the guarantee of due process of law contained in both the

State and Federal constitutions and gives this court jurisdiction on direct appeal.

The question is then presented as to whether the instant proceeding, in the nature of a petition for a writ of error *coram nobis,* is appellant's appropriate remedy. The ancient writ was a process at common law, civil in nature, used to correct errors of *fact* occurring in the trial of a cause, unknown to the defendant and the court at the time of the trial, which, if then known to the court, would have prevented the judgment. Its purpose was to recall a judgment for a mistake of fact not then in issue, which was indispensably material to the validity and regularity of the proceeding itself. (*U.S.* v. *Mayer,* 235 U.S. 55, 59 L. ed. 129.) Section 72 of the Illinois Civil Practice Act has abolished the writ in Illinois but has substituted therefor a motion in writing to correct all errors of fact which, by the common law, could have been corrected by the writ. (Ill. Rev. Stat. 1949, chap. 110, par. 196.) The change is in name only, as the remedy remains exactly as it was at common law. (*People* v. *Loftus,* 400 Ill. 432.) The instant petition was treated by the court below as a motion under section 72 of the Civil Practice Act and is so treated here.

It is settled in this State that a petition in the nature of a writ of error *coram nobis* lies in a criminal case to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance of the accused and without negligence on his part, he has been deprived of a defense which he could have used on this trial and which, if known to the court, would have prevented his conviction. *Carter* v. *People,* 403 Ill. 567; *People* v. *Dugan,* 401 Ill. 442; *Thompson* v. *People,* 398 Ill. 366.

It appears from the record here that on the trial appellant moved for a continuance, alleging the materiality of the testimony of the witnesses for whom he had subpoenas issued and that they would be available within a reasonable

time. This motion was denied, as it appears in this record, for lack of due diligence on the part of the defendant, this appellant. Appellant was then forced to go to trial without these .witnesses and his conviction resulted. The case was brought to the Appellate Court and to this court where the conviction was affirmed. (*People* v. *Thompson,* 406 Ill. 323.) The fact that the conviction has been affirmed on writ of error does not preclude the filing of the instant suit in the nature of writ of error *coram nobis* to correct errors of fact. (*People* v. *Dabbs,* 372 Ill. 160.) We presume that in the trial of this cause, from the facts then before the court, there were grounds for denying the continuance for lack of due diligence, but the instant proceeding raises facts in connection with the motion not then known to the defendant, and not known to the court when the ruling on the motion was made. If, at that time, the court had been informed, and it was established, that the witnesses were not present because of the misconduct of the officers, the motion certainly would not have been denied for the lack of due diligence of the defendant.

If appellant can establish the allegations of his petition, he most certainly has been deprived of a fair trial in accordance with requirements of due process of law and a fraud has been perpetrated upon the court. A factual situation then existed, unknown to the defendant and the court, which would have prevented this particular judgment being entered, regardless of what the judgment might have been had the witnesses been present at a later trial. This case is clearly within the rule laid down in the *Carter* and *Dugan* cases. In *Carter* v. *People,* 329 U.S. 173, the court said: "The solicitude for securing justice thus embodied in the due process clause is not satisfied by formal compliance or merely procedural regularity. It is not conclusive that the proceedings resulting in incarceration are unassailable on the face of the record. A State must give one whom it deprives of his freedom the opportunity to open an inquiry

into the intrinsic fairness of a criminal process even though it appears proper on the surface. *Mooney* v. *Holohan,* 294 U.S. 103. * * * Questions of fundamental justice protected by the due process clause may be raised, to use lawyers' language, *dehors* the record."

It appears to us that appellant's petition states a factual situation reviewable under the principles of *coram nobis,* and to deny him a hearing thereon would violate his right to due process of law.

The People contend that if the petition states a cause of action the court erred in denying their motion to amend their answer so as to deny the allegations of the petition. With this contention we are in accord. It appears from the record that the People asked leave to amend their answer before final judgment and had witnesses in court prepared to refute the allegations of the petition. This proceeding is civil in nature and as such the procedures are controlled by the Civil Practice Act. Paragraph (1) of section 46 (par. 170,) of this act provides: "At any time before final judgment in a civil action, amendments may be allowed on such terms as are just and reasonable * * * changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading or proceedings, which may enable * * * the defendant to make a defense * * *." Section 4 (par. 128,) of this same act provides: "This act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties, * * *." In *Clark* v. *Wisconsin Central Railway Co.* 261 Ill. 407, where the defendant sought permission during the trial to file a special defense which could not be made under the general issue which had been filed, we said: "Whether the defendant could have proven the defenses it offered to make is immaterial. If it in good faith sought to make such defenses, the ends of justice required that it be per-

mitted to file the plea to enable it to do so." The Civil Practice Act is so clear in its liberal provisions regarding amendments to pleadings that further citations are deemed unnecessary. These provisions should be so construed and applied that all the issues in the case will be properly presented "to the end that controversies may be speedily and finally determined" and real justice attained. Here, the petition makes grave charges against the officers of the court, which should not be allowed to stand unanswered. Permitting the People to answer these charges will not in any manner take the appellant by surprise or require him to prove anything he did not expect to prove when his petition was filed. There is, in addition, some indication in the record that the court denied the motion to amend the answer because the court was of the opinion that the petition did not state a cause of action and would be dismissed anyway. If any such consideration influenced the court's ruling, it will not be applicable when this cause is remanded for trial.

We believe, if appellant has been the victim of the suppression of evidence which he alleges in his petition, that he has been deprived of his constitutional right to due process of law. We further believe that justice requires that the People be permitted to meet these charges so that the court can determine from the evidence whether the defendant has been so deprived.

The judgment of the court denying the appellant's petition is reversed and the cause is remanded to the trial court with directions that appellee be granted leave to amend its answer to the petition.

*Reversed and remanded, with directions.*