THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD HAMMOND, Defendant-Appellant.

Fourth District   No. 15484

Opinion filed April 11, 1980.—Rehearing denied May 8, 1980.

Jason Bellows, of Bellows & Bellows, of Chicago, and Delano Law Offices, P. C., of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:
Defendant, Donald Hammond, appeals from judgments of the

circuit court of Adams County convicting him, after a jury trial, of the offenses of pandering and conspiracy to keep a place of prostitution, and sentencing him to concurrent sentences of 2 years' imprisonment for each offense and additionally fining him $5,000 for the conspiracy offense. The sentences were imposed on April 30, 1979, and arose from an indictment returned June 7, 1978.

He asserts that (1) the evidence was insufficient to support either conviction; (2) he was denied due process of law by the State's failure to inform him of the address of its principal witness and that she had been offered immunity; (3) he was denied his right to a speedy trial; (4) the trial court erred (a) in admitting testimony showing another offense by defendant, (b) in admitting evidence of declarations of a co-conspirator before the introduction of evidence of a conspiracy, and (c) in ruling on jury instructions; and (5) the sentencing procedure was improper.

Section 8—2(a) of the Criminal Code of 1961 defines the inchoate offense of conspiracy in the following manner.

"(a) Elements of the offense.

A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." Ill. Rev. Stat. 1977, ch. 38, par. 8—2(a).

Section 11—17 of the Criminal Code of 1961 includes within the definition of the offense of keeping a place of prostitution the following:

"(a) Any person who has or exercises control over the use of any place which could offer seclusion or shelter for the practice of prostitution who performs any of the following acts keeps a place of prostitution.
 ＊ ＊ ＊

(2) Grants or permits the use of such place under circumstances from which he could reasonably know that the place is used or is to be used for purposes of prostitution." Ill. Rev. Stat. 1977, ch. 38, par. 11—17.

Section 11—16(a) of the Criminal Code of 1961 describes in these words the type of pandering with which we are concerned here:

"(a) Any person who performs any of the following acts for money commits pandering:
 ＊ ＊ ＊

(2) Arranges or offers to arrange a situation in which a person may practice prostitution." Ill. Rev. Stat. 1977, ch. 38, par. 11—16(a).

The prosecution's main witness was Dorothy Roscetti, a/k/a Tommi Roscetti, who testified to the following sequence of events. In February 1976, she met co-conspirator Lavada Woolums in Springfield, Illinois. Shortly thereafter, Woolums' sister-in-law took Roscetti to the New Virginia Hotel in Quincy, Illinois. After a few days at the hotel, Roscetti and defendant held a conversation wherein defendant told her that Woolums had called him and made arrangements for Roscetti to work as a prostitute at the hotel. During this conversation, Roscetti and the defendant also discussed money arrangements. The defendant told her that the prices she charged would be left up to her. After making a pickup in the bar she was to give the desk clerk $5 and sign in. When she came back downstairs, she was to give the bartender $5. She should then have at least $10 or $20 left. The defendant told her that he would take the money she made every night and put it in the safe. When Woolums or "someone" came into town, they would pick up the money. Roscetti testified that Woolums' brother did come and pick up the money.

About a week and a half after she had arrived at the hotel, Roscetti went to West Quincy, Missouri, and spent the night there. After she returned to the New Virginia Hotel, she had another conversation with the defendant. He told her that he would let Woolums take care of the problem of her escape. He stated that he would call Woolums and inform him of her conduct. The next day, Woolums met with Roscetti. He beat her and told her not to leave anymore. About a week later, Roscetti again left the hotel for a weekend. When she returned, she had a similar conversation with the defendant. He said that he was going to call Woolums and inform Woolums that she had "messed up again."

Most of the remaining evidence in support of the prosecution came from Charles Baley who testified to the following occurrence of May 26, 1976. At that time, he was a special agent of the Illinois Bureau of Investigation. He and a partner gave a male informant $25 and sent the informant into the New Virginia Hotel. Upon returning, the informant purported to have had intercourse there with a prostitute. The agents then went to the hotel to find the prostitute. There, they met defendant who aided them in their search. He produced the guest register cards for them and told the desk clerk to assist them. The prostitute had apparently left the hotel. Defendant said that the prostitute "would not return." When Baley pointed out to defendant the informant who claimed to have visited the prostitute, the defendant told Baley that if "his girl" were to be arrested, the informant should also be arrested. Baley testified that when he asked the defendant what "his girl" meant, the conversation ended abruptly.

■■■ We conclude that the foregoing evidence was sufficient to make a *prima facie* showing of defendant's guilt of conspiracy to keep a place of prostitution, but not sufficient to make such a showing as to his guilt of

pandering. The latter offense as involved here requires that the accused act for money in arranging or offering to arrange a situation in which a person may practice prostitution. There was no evidence here that defendant acted for money. The pandering conviction must be reversed.

Most of the proof of the elements of the conspiracy offense came from Roscetti's testimony regarding statements made to her by defendant on their first meeting. His statement to her that Woolums had arranged with him for her to practice prostitution at the hotel constituted an admission (1) that he had agreed with Woolums to keep a place of prostitution, and (2) that he had sufficient control of the hotel to do so. His explanation to her of her future operating procedure (1) was a substantial step towards keeping a house of prostitution, and (2) evidenced intent upon his part that the offense be committed. The testimony of these admissions by defendant constituted direct evidence. (See *People v. Mancl* (1977), 55 Ill. App. 3d 41, 45, 370 N.E.2d 664, 667.) Roscetti's testimony that Woolums later came to the hotel to pick up the money was circumstantial evidence corroborating the existence of an agreement.

Other circumstantial evidence of substantial significance came from the testimony of Baley that when he later went to the hotel, defendant (1) stopped Baley to inquire as to his activities there, (2) procured room registration cards for Baley, (3) instructed a clerk to accompany Baley to the room where the prostitute was supposedly located, (4) sent someone to pry open the door to that room, and (5) told Baley that if "his [defendant's] girl" was arrested the informant should also be arrested. Defendant's reference to "his girl" in the context of the conversation could have been taken by the jury to infer that he was keeping prostitutes at the hotel, and the other evidence showed his control at that time.

■■ Evidence of an accused's commission of an offense not charged, even though committed subsequent to the one charged, is sometimes admissible to show a *modus operandi*. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Evidence that defendant later kept a house of prostitution would tend to corroborate Roscetti's testimony that he earlier admitted to having agreed with Woolums to do so.

■ Defendant argues that even if a *prima facie* case of conspiracy was shown, it was too weak to support a conviction because it was substantially based upon the testimony of Roscetti, who was not worthy of belief. Defendant introduced two statements she had made to the police in 1976 which contradicted her testimony in some aspects. In particular, Roscetti said that Woolums' sister-in-law and not the defendant had explained the prostitute pricing system to her. However, her testimony as to the other aspects of her conversation with defendant was not disputed. Roscetti also admitted that, prior to trial, she had been AWOL from the military twice and had been convicted of prostitution in South Carolina. Also, the witness' father and brother testified to her bad

reputation for truth-telling and said that they would not believe her under oath. However, even though Roscetti was an accomplice and the above infirmities were attendant to her testimony, that would not of itself make her testimony insufficient to support the conviction even if uncorroborated. (*People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490; *People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359; *People v. Meisenhelter* (1942), 381 Ill. 378, 45 N.E.2d 678.) As Baley's testimony gave some corroboration to Roscetti's story, and because her version of the events was not at all improbable, we conclude that the jury could properly have found defendant's guilt of the conspiracy offense to have been proved beyond a reasonable doubt.

■ Next, the defendant claims a denial of due process because the prosecution failed to fully and properly comply with discovery orders requesting Roscetti's address. The record reveals some stalling by the State in this respect, but its task was hampered by Roscetti's refusal to state where she lived. Three weeks before trial the State did give the defense the name of the city where she was staying. Also, the defense was able to have a personal interview with the witness. Thus, the defense received sufficient information and disclosure to constitute adequate compliance with the discovery orders and to nullify the claim of due process violation. We do not find any error here to be reversible.

■ In defendant's second claim of lack of due process, he asserts that the prosecution withheld evidence favorable to the defense when it did not disclose an offer of immunity made to Roscetti. In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the court held that due process requires the prosecution to furnish the defense with knowledge of evidence favorable to the defense. Here the defense had no knowledge of the offer of immunity until after the trial, but the defendant had made no specific request for this information and did not even make a general request for any information favorable to his case. In *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, the court held that, under those circumstances, the omission of the State to make disclosure of the favorable information constituted a deprivation of due process only if the undisclosed evidence created a reasonable doubt that did not otherwise exist. Here, the evidence of the offer of immunity could have been used to further impeach Roscetti. However, a significant amount of impeachment evidence was presented. Yet the jury chose to believe Roscetti. As the undisclosed evidence was merely repetitive of other impeachment evidence, we do not find it powerful enough to meet the *Agurs* requirement.

Defendant's claim of denial of his right to a speedy trial is based principally upon proceedings on an indictment returned on July 7, 1976, on a pandering charge arising from the same facts as the charge here.

After defendant had made an oral demand for a speedy trial, the case was dismissed upon the motion of the State. As we have held the evidence insufficient to support the pandering conviction, we need not decide whether that charge would be barred by failure to bring it to a timely trial. We likewise need not decide whether the conspiracy charge was barred by section 3—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—3) which requires that when the prosecution knows of two or more offenses committed by the defendant and arising out of the same conduct they must be brought in the same prosecution. Defendant argues that the conspiracy charge arose out of the same conduct as the pandering charge and became barred when the failure to grant defendant a speedy trial on the pandering charge ended that prosecution. This issue is raised for the first time on appeal and is, therefore, waived. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

Defendant also claims a denial of his right to a speedy trial on the instant indictment. He made written demand on July 24, 1978, but the record clearly shows operation of section 103—5(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(b)) to have been tolled by various delays caused by him. As his offenses were alleged to have been committed before March 1, 1977, provisions of section 103—5(f) (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(f)) did not operate to make the delays merely cause a suspension of the running of the period (*People v. Grant* (1977), 68 Ill. 2d 1, 368 N.E.2d 909).

Defendant's complaint of error in the admission of evidence showing his commission of other offenses concerns the testimony of Baley, the special agent of the Illinois Bureau of Investigation. As we have previously indicated, we deem this evidence to have been properly admitted to show defendant's *modus operandi*.

Testimony of Roscetti as to declarations made to her by the alleged co-conspirator, Woolums, was admitted prior to proof of the conspiracy. This may be done within the discretion of the court and is not error if the conspiracy is subsequently proved. (*People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.) In *People v. Simpson* (1976), 39 Ill. App. 3d 318, 349 N.E.2d 441, relied upon by defendant, proof of a conspiracy was never made.

Defendant raises a claim of error in regard to various jury instructions. He claims that Illinois Pattern Jury Instructions, Criminal, No. 6.03 (1968) (hereinafter IPI) should have been given. However, the defendant has waived this claim because he objected to IPI Criminal No. 6.03 when it was offered as People's proposed instruction No. 20. The People withdrew this instruction. Defendant objects to the denial of his instruction Nos. 11, 12, and 14. This question cannot be decided because there is nothing in the record concerning the denial of these instructions.

The record indicates that the instructions conference adjourned after submission of defendant's instruction No. 10.

■■ ■ People's instructions Nos. 15A, 18, and 20 were properly given because they were the appropriate IPI Criminal instructions. The trial court did not err in refusing defendant's instructions Nos. 6 and 5. These were non-IPI Criminal instructions tendered in a situation where IPI instructions were sufficient. Defendant's instruction No. 1 (IPI Criminal No. 3.12) was properly refused. It concerned the impeachment of Roscetti and suggested she had been guilty of an infamous crime. Her prostitution convictions were not for an infamous crime. Ill. Rev. Stat. 1977, ch. 38, par. 124—1.

■■ Finally, the defendant claims that he was improperly sentenced for two reasons. First, he says that the trial court incorrectly considered his prior arrests when determining the sentence. The trial court permitted the presentence report to contain lists of arrests. However, the trial judge informed the defendant by letter that, when sentencing, he would not give consideration to any arrests which did not result in convictions. He also wrote that he had never considered a mere arrest record when imposing sentences. Our decision in *People v. Kennedy* (1978), 66 Ill. App. 3d 35, 383 N.E.2d 255, explicitly condones the trial judge's actions. In that case, we recognized that information on arrests is likely to be included in presentencing reports or come to the trial judge's attention in other ways. We said that this does not necessarily constitute error if the judge does not consider this information with reference to the likelihood that the defendant has in fact committed the conduct charged. We also said that it would be a good practice for the judge to recite into the record that he is not considering the information with reference to the type or severity of sentence imposed. In the instant case, the trial judge's conduct appropriately follows our recommendation in *Kennedy*.

The defendant also claims that an indictment pending against him was improperly disclosed to the trial judge. This disclosure was made during a hearing on a motion for a change of venue. The sentencing judge was not the same judge who presided at the venue hearing. The sentencing judge gave no indication that he was informed of the pending indictment.

For the reasons stated, we affirm the conviction and sentence for conspiracy to keep a place of prostitution and reverse the conviction and sentence for pandering.

Affirmed in part; reversed in part.

MILLS, P. J., and WEBBER, J., concur.