THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARIO PEREZ, Defendant-Appellant.

First District (3rd Division)    No. 79-1846

Opinion filed September 23, 1981.

James N. Karahalios, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Mario Perez, guilty of the murder of Oscar Moreno, a/k/a Primitino Moreno. The trial court sentenced the defendant to serve 35 years in the penitentiary. On appeal, the defendant contends that (1) he was denied a speedy trial; (2) he was not proved guilty of murder beyond a reasonable doubt; (3) the jury was improperly instructed; and (4) the trial court erred in failing to strike all arrests not resulting in convictions from the presentence investigation report.

Ralph Villar testified that on April 13, 1978, he was working at Beto's American Wine & Liquors (Beto's) in Chicago, Illinois. At approximately 7:50 p.m., Oscar Moreno entered the tavern alone and sat at the end of the bar.

Ten to fifteen minutes later, the defendant entered the tavern and walked to the area where Moreno was sitting. Villar observed Moreno and the defendant talking. A few minutes later, Villar saw the defendant leave the tavern. He then noticed that Moreno was standing and holding his back. Villar observed blood dripping from Moreno's back. An ambulance was called, and Moreno was taken to the University of Illinois hospital.

Officer Joseph Flashing of the Chicago Police Department testified that when he arrived at Beto's, he observed attendants placing the semiconscious Moreno into an ambulance. After interviewing witnesses, Flashing searched the premises but was unable to discover any weapon.

Dr. Charles Stollar, the resident on call when Moreno was brought into the emergency room of the University of Illinois hospital, testified that Moreno had a single internal injury, a stab wound in the back. X rays revealed that a large collection of fluid was present deep in Moreno's abdomen. Moreno's blood pressure indicated that he had lost a significant amount of blood. It was decided that surgery was necessary. Dr. Stollar, assisted by three other surgeons, first opened Moreno's abdomen with a midline incision. He made two additional incisions in the abdomen for drains. Dr. Stollar testified that he observed 500 cc's of blood within Moreno's abdominal cavity. This condition was highly abnormal. He discovered a large longitudinal laceration of the vena cava, the major vein in the lower portion of the body. This laceration was between 2 and 3 inches in length. In addition, the main vein in the right knee was lacerated as well as the first portion of the small intestine and several small veins. The surgery procedure lasted approximately four and a half hours. Following surgery, Moreno was in poor condition. The doctors were unable to maintain his blood pressure, and Moreno died several hours later. Dr. Stollar stated that in his opinion, the stab wound was the cause of death.

Dr. Stollar stated that he was in training at the time that he performed

the surgical procedures on Moreno. He admitted that an injury to the vena cava could occur in the course of surgery. In response to the question of whether the laceration of Moreno's vena cava occurred during surgery, Dr. Stollar responded "Absolutely not."

Dr. Eupil Choi, a pathologist at the Cook County Medical Examiner's office, testified that he performed an autopsy on Moreno. When Dr. Choi examined the victim's body, he observed several wounds. In his opinion, the cause of Moreno's death was a stab wound to the abdomen. Dr. Choi indicated that the wound by the backbone was surgically induced. Dr. Choi further stated that it is difficult to distinguish a wound produced by a surgical instrument from a wound produced by a weapon.

Investigator James Cornelison of the Chicago Police Department testified that on April 17, 1978, an arrest warrant was issued for the defendant and that on August 23, 1978, he was notified that the defendant was in custody in Fresno, California. The defendant waived extradition and was brought back to Chicago on September 1, 1978.

Officer Gary Snow of the Fresno, California, Police Department testified that he interviewed the defendant concerning the arrest warrant. Snow first advised the defendant of his constitutional rights. Then, the defendant gave Officer Snow the following statement concerning the stabbing of Moreno.

On April 13, 1978, the defendant and his cousin were drinking beer in a tavern after work. As the defendant was going to the restroom, he observed Moreno arguing with his cousin. The defendant intervened, Moreno pushed the defendant, and the defendant hit Moreno. Moreno took from his coat a .25-caliber automatic and put it close to the defendant's side. The defendant left the tavern.

The defendant acquired a steak knife and returned to the tavern because "he wasn't going to let this guy get away with pulling a gun on him." When he discovered that Moreno was no longer in the first tavern, the defendant went across the street to a second tavern where he saw Moreno. The defendant told Moreno to come outside because "I am going to give you something." Moreno stood up, started to turn, and appeared to reach into his coat pocket. At this time, the defendant stabbed Moreno.

Detective Snow testified that he asked the defendant to repeat his statement. The defendant stated that when Moreno stood up, the defendant quickly grabbed him, turned him around, and stabbed him in the back. Although Moreno did not move his hands, the defendant did not know if Moreno would try to reach into his pocket.

Following deliberations, the jury returned a verdict of guilty of murder, not guilty of voluntary manslaughter, and not guilty of armed violence.

## I

The defendant first argues that he was denied his statutory right to a speedy trial. Pursuant to the statute (Ill. Rev. Stat. 1977, ch. 38, par. 103—5), the State must bring a defendant's case to trial within 120 days of the date he was taken into custody. The defendant contends that his trial did not begin until the 121st day.

■■ We note that this issue is raised by the defendant for the first time on appeal. The defendant neither applied for discharge prior to his conviction nor raised this issue in his post-trial motion. Thus, he has waived his right to such a discharge. *People v. Solheim* (1977), 54 Ill. App. 3d 379, 369 N.E.2d 308.

■■ However, assuming that there was no waiver of this issue, we believe that the State did comply with the statute. In reaching the conclusion that his trial commenced on the 121st day of his term, the defendant assumed that the 120-day period commenced running on August 23, 1978, the day he was taken into custody in California. Such an assumption was incorrect. The 120-day period began on September 1, 1978, when the defendant was extradited to Illinois. (*People v. Hayes* (1962), 23 Ill. 2d 527, 179 N.E.2d 660; *People v. Gilliand* (1971), 131 Ill. App. 2d 635, 267 N.E.2d 140.) Thus, there was no violation of the defendant's statutory right to a speedy trial.

## II

The defendant next argues that the State failed to prove him guilty of murder beyond a reasonable doubt. He first contends that the State did not present any evidence to refute his claim of self-defense. His claim is based on the statement to Detective Snow that he stabbed Moreno after he saw Moreno reach into his pocket. However, in the defendant's second statement, he said that he stabbed Moreno in the back as soon as Moreno stood up despite the fact that Moreno had not moved his hands.

A jury is not required to accept as true the defendant's testimony concerning self-defense. Rather, in weighing the evidence, the jury must consider the probability or improbability of the testimony, the circumstances surrounding the killing, and the testimony of other witnesses. *People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234.

The circumstances surrounding the instant stabbing were that the defendant and Moreno were involved in an incident at a tavern. The defendant left the tavern, acquired a knife, and returned in search of Moreno. The defendant did not intend "to let this guy get away with pulling a gun on him." When the defendant located Moreno, he stabbed him in the back. The defendant gave conflicting statements concerning whether Moreno appeared to reach into his pocket for a gun. However, the police were unable to locate any weapon in Moreno's possession or on

the premises. After the stabbing, the defendant left the tavern and fled the State.

The issue of self-defense is a question to be resolved by the trier of fact. This factual finding will not be disturbed on review unless it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of guilt. *People v. Chapman* (1977), 49 Ill. App. 3d 553, 364 N.E.2d 577.

■■ After considering the defendant's conflicting statements and the circumstances surrounding the stabbing, the jury rejected the defendant's claim of self-defense. We cannot say that such a conclusion was so unreasonable as to raise a reasonable doubt of guilt.

The defendant also contends that the State failed to prove beyond a reasonable doubt that Moreno died as a result of the stabbing. We disagree.

It is undisputed that the defendant stabbed Moreno in the back with a steak knife. This stabbing caused severe internal bleeding, and Moreno's X rays confirmed the existence of excessive fluid in his abdomen. His blood pressure indicated the loss of a significant amount of blood. When Dr. Stollar opened Moreno's abdominal cavity, he observed 500 cc's of blood therein. Dr. Stollar testified that the cause of Moreno's death was the laceration of the vena cava which resulted in a massive loss of blood.

The defendant bases his reasonable doubt argument on Dr. Choi's testimony that the defendant was stabbed in the abdomen. Because the incision in the abdomen was made by Dr. Stollar, the defendant concludes that the vena cava was cut during surgery.

■■ Although Dr. Choi did state that Moreno was stabbed in the abdomen, we cannot say that this testimony alone raises a reasonable doubt concerning the cause of death. We believe that it was reasonable for the jury to conclude that Dr. Choi erred when he identified the abdominal incision as a stab wound. When Dr. Choi examined Moreno's body, he saw several incisions thereon. Dr. Choi explained that it is difficult to distinguish a wound produced by a surgical instrument from a wound produced by a weapon. This fact is evident from Dr. Choi's testimony that the wound in the back was surgically induced. The defendant himself does not dispute the fact that his knife was responsible for the wound in the back.

The defendant also argues that the jury should have returned a verdict of voluntary manslaughter rather than murder. He contends that there was no evidence to refute his argument that he had a belief, albeit unreasonable, that his actions were justified because Moreno appeared to reach into his pocket for his gun.

■■ As we have previously discussed, the defendant related two versions of the incident. It was within the jury's discretion to accept as true the defendant's statement that although Moreno made no aggressive move,

he stabbed Moreno in the back. Thus, the jury's finding that Perez was guilty of murder will not be disturbed.

### III

The defendant also argues that the jury was improperly instructed. He first contends that the jury was erroneously instructed as to the difference between the offenses of murder and voluntary manslaughter. The jury was instructed that in order to sustain the charge of murder, the State must prove beyond a reasonable doubt:

"First: That the defendant performed the acts which caused the death of Primitino Moreno;

Second: That when the defendant did so, he intended to kill or do great bodily harm to Primitino Moreno, or he knew that his acts would cause death or great bodily harm to Primitino Moreno, and

Third: That the defendant was not justified in using the force which he used." IPI Criminal Nos. 7.02 and 25.05.

The jury was also instructed that in order to sustain the charge of voluntary manslaughter, the State must prove beyond a reasonable doubt:

"First: That the defendant intentionally or knowingly performed the acts which caused the death of Primitino Moreno; and

Second: That when the defendant did so he believed that circumstances existed which would have justified killing Primitino Moreno; and

Third: That the defendant's belief that such circumstances existed was unreasonable.

Fourth: That the defendant was not justified in using the force which he used." IPI Criminal Nos. 7.06 and 25.05.

The defendant alleges that according to the Illinois Pattern Jury Instructions for criminal cases, the following element should have been included in the murder instruction:

"* * * Fourth: That the defendant did not believe that circumstances existed which justified the use of the force which he used." (IPI Criminal Nos. 7.02 and 27.01.)

Instruction 27.01 is a sample set of instructions to be used where the evidence warrants instructions concerning murder, voluntary manslaughter and self-defense.

Although the State's instruction on murder did not contain the fourth element, the defendant did not object to it at trial. Failure to either object or tender a particular instruction will preclude a defendant from raising objections on appeal to given instructions or lack of instruction. *People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472.

The defendant relies on *People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593, and argues that he did not waive this error because the

omission of the fourth proposition from the murder instruction was plain error. However, the facts in *Stuller* are distinguishable from the facts in the instant case. In *Stuller*, the jury found the defendant guilty of both murder and voluntary manslaughter. The trial court vacated the verdict of guilty of voluntary manslaughter and entered judgment on the verdict of murder. On review, the appellate court reversed the murder conviction and remanded the cause for entry of a finding of guilty of voluntary manslaughter. The appellate court pointed out that because the jury returned a verdict of guilty of voluntary manslaughter, it necessarily found that the defendant believed, albeit unreasonably, that circumstances existed which justified his actions. The court noted that such a finding was compelled by substantially uncontroverted evidence. The court reasoned that because of the omission of the fourth proposition of instruction No. 27.01, the verdict of guilty of murder would also have been in full accord with the court's instruction. The court held that in light of the jury's finding that the defendant believed that circumstances existed which justified the killing and the fact that ample evidence supported this finding, the defective murder instruction gave rise to plain error affecting his substantial rights.

■■ In the instant case the jury returned a not-guilty verdict on the voluntary manslaughter charge and a guilty verdict on the murder charge. Obviously, the jury did not believe that the defendant possessed any belief, reasonable or unreasonable, that circumstances existed which would have justified the use of the force which he used. Thus, the omission of the fourth proposition of instruction No. 27.01 did not affect the jury's deliberation on the issue of murder. Therefore, we cannot say that the omission of the fourth proposition of the murder instruction gave rise to plain error.

The defendant also argues that the trial court should have instructed the jury that the hospital's negligence may have caused Moreno's death. However, the defendant did not request such an instruction at trial. The general rule in Illinois as to the question of giving jury instructions is that a party who desires a specific instruction must offer it and request the court to give it. The trial court has no obligation to give instructions not requested by counsel. (*People v. Parks* (1976), 65 Ill. 2d 132, 357 N.E.2d 487; *People v. Loya* (1980), 90 Ill. App. 3d 1078, 413 N.E.2d 1361.) Therefore, no party may raise on appeal the failure to give an instruction unless he shall have tendered it at trial. *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.

■■ In criminal cases, however, the waiver rule will not prevent review of substantial defects in jury instructions "if the interests of justice require."[1]

---

[1] Such was the finding of this court in *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85, a case cited by the defendant.

(Ill. Rev. Stat. 1977, ch. 110A, par. 451(c).) In view of our holding in the instant case that the State proved the legal cause of Moreno's death beyond a reasonable doubt, we cannot say that the court's failure to give this instruction constituted a substantial defect. (See *People v. Gulliford* (1980), 86 Ill. App. 3d 237, 407 N.E.2d 1094.) Therefore, we hold that the defendant waived any error in the trial court's failure to instruct the jury on the possibility of the existence of an intervening cause by failing to give the desired instruction.

## IV

Finally, the defendant contends that the trial court erred in failing to strike all arrests not resulting in convictions from the pre-sentence investigation report. The defendant concludes that the trial court considered these arrests in determining his sentence, which he characterizes as excessive. He cites *People v. Kennedy* (1978), 66 Ill. App. 3d 35, 383 N.E.2d 255, in which the court held that it was error for the trial court to consider such information in the determination of the sentence. The court further stated:

> "We recognize that such information is likely to be presented to the sentencing judge in presentence reports or come to his attention in other ways. Error does not necessarily occur thereby but the judge should not consider this information with reference to the likelihood that the defendant has in fact committed the conduct charged. A good practice would be for the judge to recite into the record that he is not considering the information with reference to the type or severity of sentence imposed." 66 Ill. App. 3d 35, 40.

■■ We do not believe that the inclusion of the prior arrests in the report prejudiced the defendant in the case at bar since the trial court specifically stated "The Court is only considering, of course, the convictions of the defendant concerning the possible sentence of the Court." (See also *People v. Hammond* (1980), 82 Ill. App. 3d 839, 403 N.E.2d 305, *cert. denied* (1981), ___ U.S. ___, 67 L. Ed. 2d 615, 101 S. Ct. 1482.) Therefore, no error was committed in this regard.

We also fail to find any abuse of discretion in the imposition of the sentence and will not disturb the trial court's determination on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

RIZZI, P. J., and WHITE, J., concur.