THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD HAMMOND, Defendant-Appellant.

Fourth District   Nos. 17018, 17254 cons.

Opinion filed March 3, 1982.—Supplemental opinion filed on denial of rehearing April 29, 1982.

Charles H. Delano, of Delano Law Offices, P. C., of Springfield (Richard P. Ryan, of counsel), for appellant.

Anthony B. Cameron, of Quincy (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

Conviction of conspiracy to keep a house of prostitution.

Affirmed on appeal.

Section 72 petition then filed.

Petition denied.

We affirm.

On direct appeal from Hammond's convictions of pandering and conspiracy to keep a house of prostitution, we reversed defendant's conviction for pandering but affirmed the judgment of conspiracy to keep a house of prostitution. (*People v. Hammond* (1980), 82 Ill. App. 3d 839, 403 N.E.2d 305.) After the mandate of this court was issued, defendant's petitions for review by the Illinois and United States Supreme Courts were denied. Defendant subsequently filed an amended section 72 petition (Ill. Rev. Stat. 1979, ch. 110, par. 72) for relief from the judgment and sentence entered on his conviction of conspiracy, and from the denial of this the defendant prosecutes the present appeal.

On appeal, defendant urges that the dismissal of his petition was an abuse of discretion and in support relies upon: (1) an affidavit of a recently located witness, Edward Prebe, whose testimony is alleged to be material to the guilt or innocence of defendant Hammond, and (2) the admission after trial by the former State's Attorney for Adams County, Robert Bier, that he had been "stonewalling" the defendant during the original trial in the production of the State's chief witness, Dorothy Roscetti.

## Background

On July 7, 1976, an indictment was returned by the Adams County grand jury charging Hammond, his wife Elaine, and Lavada Woollums with the crime of pandering. This indictment was dismissed by the State on November 22, 1976, when the State's chief witness, Dorothy Roscetti, a/k/a Tommi Roscetti, became unavailable for reasons which are not entirely clear from the record. Almost two years later, on June 7, 1978, the Adams County grand jury again returned an indictment against the Hammonds and Woollums. The indictment was based on the same circumstances as the original indictment, but now Hammond was charged with two counts of conspiracy to keep a place of prostitution and pandering, as well as conspiring to pander. On June 9, 1978, defendant appeared, entered a plea of not guilty, and an order was entered requiring the State to furnish Hammond with discovery by August 18, 1978. The State's Attorney of Adams County, Robert Bier, failed to comply with this direction on the date ordered but indicated at a subsequent hearing that discovery would be completed by August 29, 1978.

On September 29, 1978, Mr. Bier filed a partial answer to Hammond's discovery motion but numerous defense requests were excluded from the response. At a subsequent motion hearing, a further order was entered requiring the completion of discovery by October 10, 1978. The information sought by Hammond in his discovery motion was the disclosure of the address and current whereabouts of the chief witness, Roscetti. On October 10, 1978, Mr. Bier filed a response to the most recent discovery order and listed as her address the address of her father, though Roscetti was not residing there and had not resided there for a period of four years. Again, a motion to dismiss was filed by Hammond. At the conclusion of the hearing on this motion, the prosecution was ordered to have Roscetti in court on November 20, 1978, and Hammond's motion to dismiss was continued.

Not surprisingly, Roscetti was not produced by the prosecutor for the November 20 hearing. According to Mr. Bier, the reason for her nonappearance was the result of a misunderstanding regarding the payment of an airline ticket to enable her to appear. At the November 20 hearing the prosecutor admitted that he did have a phone number of Roscetti but refused to disclose it to Hammond. The prosecutor also readily admitted he knew where she was but suggested to the court that his reluctance in disclosing the address to Hammond was because of Roscetti's fear Hammond would cause her harassment and embarrassment. Hammond argued that disclosure was necessary to enable a background investigation to be conducted to gather impeachment evidence for the trial. The court continued the hearing on Hammond's motion to dismiss and ordered Mr. Bier to produce the chief witness in open court on November

27, 1978, and to supply Hammond, within 24 hours, with Roscetti's physical location or address.

The 24-hour production order was not complied with, but on November 27 Roscetti did appear in court for the interview. During the examination of her by Hammond's counsel, she indicated that she had no objections to disclosing her telephone number. At the hearing's conclusion, the court ordered the prosecutor to disclose Roscetti's phone number, information collected by the prosecutor regarding her prior statements, and her FBI identification record which was to be furnished by December 6, 1978. On December 13, 1978, Hammond filed a motion to dismiss for failure to disclose Roscetti's phone number and other information. By December 22, the prosecutor had disclosed the prior statements and the FBI report to Hammond but continued to refuse to disclose the phone number, despite Roscetti's willingness and the court's discovery order. On the same date, another order was entered requiring the disclosure of the phone number by January 6, 1979. Again, Hammond's motion to dismiss was denied. The prosecutor filed a motion for relief from the December 22, 1978, order to produce the number of Roscetti and yet a further order was entered on January 17, 1979, requiring the prosecutor to disclose the first three digits of Roscetti's phone number and the city in which she was residing. Again, the order was not complied with.

From the time of the first indictment until the trial of Hammond on February 5, 1979, two defense witnesses had died. On February 7, 1979, the jury returned a verdict of guilty on the charge of conspiracy to keep a house of prostitution and pandering and Hammond received concurrent sentences of 2 years' imprisonment. On appeal to this court, Hammond's conviction of pandering was reversed due to failure of proof beyond a reasonable doubt, but the conspiracy conviction was affirmed. 82 Ill. App. 3d 839, 403 N.E.2d 305.

At trial, the prosecutor's main witness was Dorothy Roscetti. She testified that in February 1976 she had met Lavada Woollums in Springfield, who arranged with Hammond for her to work as a prostitute in Quincy. She explained the operations at the Quincy Hotel and said that on two occasions when she escaped, she was beaten by Woollums upon her return. In short, the image created by her testimony was that she was directly accountable to Woollums and Hammond and could not leave without their permission. Roscetti's testimony was contradicted on cross-examination by several inconsistent statements, and Roscetti's stepbrother and her father both testified that she had a poor reputation for truthfulness. Also testifying for the State was Charles Bailey, an agent for the Illinois Bureau of Investigation. He stated that an informant had been paid to have intercourse with prostitutes at the new Virginia Hotel where

Roscetti worked and that the informer had advised the officers of his intercourse with one of the women. Bailey and several officers went inside the hotel to find the prostitute. While inside, Hammond assisted the agents in looking for the woman but she could not be found. According to Bailey, Hammond stated that if the agents were going to arrest "his girl," then the undercover agent should be arrested as well. On the basis of this testimony, Hammond was found guilty of pandering and conspiracy to keep a place of prostitution. Following the affirmance by this court of defendant's conspiracy conviction, review in the Illinois and United States Supreme Court was sought and denied.

While waiting for word of the appealability of Hammond's conviction, defense counsel arranged for an informal meeting with the prosecutor, Mr. Bier, and the trial judge, David Slocum. At this hearing, Judge Slocum later testified that Mr. Bier was asked whether he hadn't been stalling the defense in producing the whereabouts of witness Roscetti. According to Judge Slocum, Mr. Bier admitted to Hammond's counsel that he had been "stonewalling" during the discovery process. In the order dismissing Hammond's present petition, the trial court made a finding that the former State's Attorney, Mr. Bier, had intentionally withheld information from the defendant through the discovery process regarding the whereabouts and address of the prosecution witness. The State does not challenge this finding on appeal.

In short, as the basis for defendant's section 72 petition for relief, he urges that the wilful refusal of the prosecutor to comply with the court's discovery orders and the recent discovery of the location of Edward Prebe, a defense witness who was unavailable during the case in chief, mandates a new trial in this cause.

I

First we consider the basis for the granting of a section 72 petition for relief as a result of the discovery of the location of Edward Prebe.

In support of his argument that newly discovered evidence, taken in conjunction with the prejudice resulting from the loss of two witnesses who died before trial in this case, is sufficient to grant a new trial under section 72 of the Civil Practice Act, Hammond relies upon *Thompson v. People* (1951), 410 Ill. 256, 102 N.E.2d 315; *People v. Hughes* (1973), 11 Ill. App. 3d 224, 296 N.E.2d 643; and *Jenkins v. Dearborn Securities Corp.* (1976), 42 Ill. App. 3d 20, 355 N.E.2d 341. The State, taking the contrary position, relies upon *People v. Colletti* (1971), 48 Ill. 2d 135, 268 N.E.2d 397, and *People v. Hammers* (1977), 48 Ill. App. 3d 1023, 363 N.E.2d 914.

Initially, we note that there is some doubt as to whether Prebe was unknown to defendant at the time of trial or simply unavailable. Since

section 72 relief is unavailable in either case, we will treat the testimony as the parties have—as newly discovered evidence.

A petition for relief by means of a section 72 petition (Ill. Rev. Stat. 1979, ch. 110, par. 72) is in the nature of a writ of error coram nobis and has as its principal purpose the bringing before a court of matters of fact not appearing in the record which if known to the court would have prevented the rendition of the judgment. (*People v. Touhy* (1947), 397 Ill. 19, 72 N.E.2d 827; *Hammers*.) While this is the avowed purpose of a section 72 petition, relief may not be granted on the basis of newly discovered evidence. (*Colletti; People v. Griswold* (1980), 89 Ill. App. 3d 661, 411 N.E.2d 1224; *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56; *People v. Freeman* (1974), 26 Ill. App. 3d 443, 316 N.E.2d 207; *Hammers*.) In *Hammers*, this court had occasion to consider this very issue, *i.e.*, the use of newly discovered evidence in a section 72 petition. There, defendant had been convicted and sentenced for the murder of Rose Charapata. After trial, a person who had allegedly been with the defendant was alleged to have made statements to other persons that he and not the defendant had killed the victim. Defendant brought a section 72 petition on the basis of this newly discovered evidence but the petition was dismissed. There, this court, in reviewing the relevant authorities, stated:

> "In *Touhy*, the supreme court ruled directly that neither under writ of error coram nobis nor its statutory substitute, section 72, may relief be granted for newly discovered evidence. After the 1947 *Touhy* ruling, the supreme court held in *Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 359, that when necessary to prevent injustice, courts should apply equitable principals [*sic*]. In 1955, section 72 was amended (1955 Ill. Laws 2238, §1) to codify *Ellman v. De Ruiter* and to provide that relief formerly available by the equitable remedy of bill of review became available under section 72. Relief for newly discovered evidence had been available pursuant to a bill of review (*Waterman v. Hall* (1921), 298 Ill. 75, 131 N.E. 145). In *Williams v. People* (1964), 31 Ill. 2d 516, 202 N.E.2d 468, and *People v. Colletti* (1971), 48 Ill. 2d 135, 268 N.E.2d 397; however, the supreme court stated that section 72 relief may not be granted on the grounds of newly discovered evidence.
>
> &ast; &ast; &ast;
>
> In view of the precedent binding upon us, we conclude that we cannot consider the newly discovered evidence in support of the petition." 48 Ill. App. 3d 1023, 1027-28, 363 N.E.2d 914, 917.

Defendant's reliance upon *Thompson* is also misplaced. In *Thompson*, the defendant was convicted of keeping a house of ill repute and

sought a writ of error coram nobis now governed by section 72 of the Civil Practice Act. The petition alleged that at trial the defendant had delivered subpoenas to the sheriff of Sangamon County to command the appearance of two defense witnesses. The subpoenas were returned "not found in Sangamon County" and the trial proceeded to judgment. The witnesses who were subpoenaed would have testified that defendant did not own the house of prostitution. The petition further alleged that the sheriff and State's Attorney had threatened the witnesses to stay out of town until after trial and was supported by the affidavit of one of the witnesses. The supreme court found that the allegations of the petition, if true, justified the issuance of the writ. In our case, however, no suppression of evidence as in *Thompson* is involved with respect to witness Prebe. Prebe was out of State at the time of the trial working as an itinerant laborer on the Mississippi River and was not secreted through any action of the State's Attorney. This finding was made by the trial court in its ruling on Hammond's present petition and is reflected in the record before us. Hammond does not challenge that finding here.

In *Hughes*, the defendant was convicted of burglary and filed a post-trial motion contending that newly discovered evidence of an accomplice, which showed that he was not in the burglarized building at the time of the crime but had lost consciousness in the back seat of the car, warranted the granting of a new trial. The court agreed and remanded. *Jenkins*, like *Hughes*, also involved a ruling on a post-trial motion based on newly discovered evidence. These cases are simply inapplicable here. Both involve rulings on post-trial motions, where newly discovered evidence can form the basis for such relief in the discretion of the trial court. See *People v. Estes* (1976), 37 Ill. App. 3d 889, 346 N.E.2d 469; *People v. Johnson* (1978), 60 Ill. App. 3d 183, 376 N.E.2d 381.

■■ In view of the precedent binding upon us, we reaffirm the position taken in *Hammers* that newly discovered evidence may not form the basis for the granting of a section 72 petition for relief.

## II

We next consider Hammond's contention that the deliberate and intentional violations of court discovery orders, coupled with the loss of three witnesses, is sufficient for the granting of his section 72 petition for relief.

During the delay in bringing defendant to trial from July 7, 1976, when the first indictment was returned, until February 5, 1979, two defense witnesses had died and the third left the State. On direct appeal, defendant raised these issues in the context of his contentions that his right to a speedy trial and to discovery had been denied. He now argues that

because the prosecutor's wilful discovery violations caused the loss of these three witnesses, a new trial should be granted. Hammond argues that Mr. Bier's conduct was in blatant disregard to the prosecutor's duty to insure a fair trial and indicates that his conviction was obtained by fraud and duress. Defendant relies upon *Johnston v. People* (1943), 383 Ill. 91, 48 N.E.2d 350, *Thompson v. People* (1951), 410 Ill. 256, 102 N.E.2d 315, and *People v. Wilson* (1962), 24 Ill. 2d 425, 182 N.E.2d 203. The State opposes this assignment of error and cites *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, to argue that points previously raised and cited on direct review cannot be raised in a section 72 petition.

At the outset, we note that the defendant does not contend, nor does the evidence indicate, that the prosecutor's actions violated the rule of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. Hammond does not claim that Roscetti would have given exculpatory testimony. Rather, he argues that witness Roscetti's whereabouts were concealed in an effort to delay his trial and to prejudice him by the loss of evidence.

In this respect we think defendant goes too far in his interpretation of the evidence. The findings below concern the prosecutor's delay in producing Roscetti only and indicate nothing with respect to the reason for the 2½-year delay in bringing the case to trial. We can find in the record nothing to indicate that the prosecutor stalled in the hopes that defendant's witnesses would die or leave the State and we feel that such an assertion is speculation on the part of defendant. So far as the record shows, the delay by the prosecutor was deliberate only in preventing Hammond from obtaining the current address and phone number of Roscetti, a witness whom defendant had previously interviewed.

■■ In the direct appeal of Hammond's conviction, one assignment of error was that defendant was denied due process because the prosecution had failed to fully comply with the discovery orders requesting Roscetti's address. We said:

> "Next, the defendant claims a denial of due process because the prosecution failed to fully and properly comply with discovery orders requesting Roscetti's address. The record reveals some stalling by the State in this respect, but its task was hampered by Roscetti's refusal to state where she lived." (82 Ill. App. 3d 839, 844, 403 N.E.2d 305, 309.)

While the above language indicates we did address this issue, equally apparent is the fact that our previous consideration was devoid of any indication that the intentional nature of the violation was known. In *Berland*, the matters alleged in support of the section 72 petition were included in the defendant's post-trial motion, were argued at that motion

hearing, and were included in the record on appeal. The court thus held that defendant was not able to again seek review on matters which had already been raised and answered. In contradistinction, here the prosecutor's intentional violation was not known at trial and was not known by this court at the time of our opinion on direct appeal. We thus conclude that defendant is not foreclosed from raising this issue in support of his section 72 petition.

Hammond interprets the State's Attorney's unfortunate admittance as showing that the underlying criminal trial was obtained by fraud and duress, bringing this case within the holdings of *Johnston, Thompson,* and *Wilson.* In *Johnston,* the defendant had been convicted at a jury trial of receiving stolen property and sought a section 72 petition to set the conviction aside on the ground that the property had actually been in the possession of a codefendant. The evidence of the codefendant's possession of the property established that part but not all of the property was in his possession, and the court, in ruling on defendant's section 72 petition, held that even if the matters in the petition were true and known, it would not have prevented the conviction. *Johnston* is markedly different from the case at bar, and it is difficult to see how that case supports defendant's argument here. *Thompson* involved a similar situation as in the case at bench in that both involved prosecutorial concealment of evidence. There the witnesses were never available, while here the discovery order violations concerned the prosecutor's refusal to disclose the address and phone number of the State's chief witness who was made available to defendant and who was present at trial.

In *Wilson,* defendant had been convicted of selling heroin and at trial raised the defense of entrapment. The prosecutor was shown to have acquiesced in sending one of its informers who was crucial to defendant's claim of entrapment out of the State. The court reversed the conviction and remanded for a new trial holding that the deliberate conduct in sending the witness out of the State denied the defendant a fair trial. In the case before us, the prosecutor intentionally suppressed information regarding the location of the chief witness, but the witness was available to defendant for interview and he did receive some information relative to her background to enable him to present impeachment evidence at trial. We thus perceive these cases as involving a much greater threat of a conviction obtained by fraud and find them inapplicable here. Prosecutor Bier certainly did violate the numerous discovery orders, and we do not in any way countenance such conduct. The fact is, however, the witness was available prior to trial for interview, which significantly distinguishes *Thompson* and *Wilson* from the facts at bar.

The question this court must answer in ruling upon Hammond's

petition is whether, by some excusable mistake or ignorance on the part of the accused and without negligence on his part, he has been deprived of a defense which he could have used. at his. trial, and which, if known to the court, would have prevented his conviction. (See *People v. Touhy* (1947), 397 Ill. 19, 25, 72 N.E.2d 827, 831.) Had the intentional prosecutorial conduct been known at trial, the trial court could have dismissed the indictment. Pursuant to the sanctions available for refusal to comply with discovery orders, the trial court may enter such orders as it deems just under the circumstances, which includes dismissal. Ill. Rev. Stat. 1979, ch. 110A, par. 415(g).

The parties have not cited any cases which involve the question of whether relief pursuant to a section 72 petition is available for violation of discovery orders, discovered after direct appeal to have been intentional. Cases arising on direct appeal have noted that dismissal may be appropriate but have found that such sanction was not proper under the facts there presented. See *People v. Anderson* (1980), 80 Ill. App. 3d 1018, 400 N.E.2d 675 (abuse of discretion to dismiss misdemeanor charges for State's violation of discovery orders); *People v. Leannah* (1979), 72 Ill. App. 3d 504, 391 N.E.2d 187 (abuse of discretion to dismiss charges for State's violation of discovery orders by inadvertent erasure of video tape and delay in tendering to defendant police reports); and *People v. Forsythe* (1980), 84 Ill. App. 3d 643, 406 N.E.2d 58.

In *Forsythe*, the trial court dismissed an indictment for the prosecutor's failure to disclose the existence of an informant, but on appeal the appellate court found this to be an abuse of discretion. The court in discussing the propriety of various discovery sanctions stated:

"[I]f the refusal to disclose the informant's existence here was intentional, use of the trial court's contempt power rather than a dismissal of the indictment is a more direct and effective way of regulating the conduct of trial attorneys in carrying out their discovery duties. [Citation.]" (84 Ill. App. 3d 643, 646, 406 N.E.2d 58, 61.)

This was the sanction recommended by the trial judge in the case at bar in its order dismissing Hammond's amended section 72 petition. Thus, while defendant's amended section 72 petition presented a defense, it would not, in line with the above authorities, have prevented his conviction. We likewise agree that the court's contempt power rather than dismissal is the more appropriate sanction to be applied. While we in no way approve of the conduct of the former State's Attorney of Adams County, we believe, as did the trial court, that use of the contempt power is more in line with the purpose of effectuating discovery and that dismissal would not have been the appropriate sanction.

Hammond's petition, as such, presented no defense not known at the

time of the trial which would have prevented the judgment from being entered. It was, therefore, properly denied.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE MILLS delivered the supplemental opinion of the court:

Following the briefing and argument in this court, the Illinois Supreme Court handed down its opinion in *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273. *Ostendorf* has circumscribed the authorities we relied upon in holding that the allegations of the petition filed herein alleging the location of newly discovered evidence cannot form the basis of a section 72 petition for relief.

In *Ostendorf*, a section 72 petition was filed alleging the fraudulent concealment of evidence of design defects in a tractor model at issue in Ostendorf's products liability suit against International Harvester. After finding that the two-year statute of limitations for section 72 petitions (see Ill. Rev. Stat. 1979, ch. 110, par. 72(3)) was not applicable when evidence sought through discovery interrogatories had been fraudulently concealed by the defendant, the court held that such new evidence of a design defect could form the grounds for section 72 relief despite International Harvester's contention that newly discovered evidence would not present a meritorious claim under that section. The court stated:

"International Harvester has argued vehemently in this court that newly discovered evidence can never be a ground for setting aside a judgment under section 72. It is true that language to this effect can be found in many of our cases. (*People v. Colletti* (1971), 48 Ill. 2d 135, 137; *Schuman v. Department of Revenue* (1967), 38 Ill. 2d 571, 574; *People v. Touhy* (1947), 397 Ill. 19, 25.) However, closer examination reveals that in these cases and indeed in all the cases we have found in which newly discovered evidence was held not to be a sufficient ground for relief under section 72, it was for one of two reasons: either the losing litigant, through the exercise of ordinary diligence, could have discovered and produced the evidence at trial; or the evidence was not of so material and controlling a nature that it probably could have changed the outcome of the trial. [Citations.]" *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 283.

■■ We thus have supplemented this opinion to consider whether the newly discovered evidence, *i.e.*, the location of Edward Prebe and his testimony, is sufficient to afford relief from the judgment of conviction.

For newly discovered evidence to be sufficient, this court has said that the evidence must: (1) be of such a nature that it would change the trial's outcome, *i.e.*, material; (2) have been discovered since the trial; and (3) be such that it could not have been discovered by due diligence. (*People v. Estes* (1976), 37 Ill. App. 3d 889, 346 N.E.2d 469.) We believe that petitioner has failed to set out facts sufficient to meet the above requirements for section 72 relief.

The newly discovered evidence of Edward Prebe—which was attached to the petition by means of an affidavit—related Prebe's involvement with Tommi Roscetti, the State's chief witness, and consisted of statements made to Prebe and his opinion of Roscetti's relationship with defendant Hammond. These statements serve to impeach Roscetti's testimony at trial that she feared Hammond and was directly accountable to him. None of the matters averred that Hammond was not operating a house of prostitution or were in any way relevant to Hammond's guilt or innocence of the charges, except insofar as the evidence impeached the veracity of Roscetti. At the trial, however, Roscetti was effectively impeached by prior inconsistent statements on cross-examination and through the opinion testimony of her father and brother who stated that she had a poor reputation for truthfulness.

At the hearing on defendant's petition, the trial court stated that even if Prebe had testified it would not have changed the judgment of the case. The court stated, "[a]s Mr. Delano [counsel for defendant] again points out that there was all kinds of evidence at the trial to attempt to impeach Ms. Roscetti, and this would have been one more attempt apparently. As a result, I don't find that that is sufficient for the setting aside of the judgment."

We concur in this conclusion and believe the court's refusal to grant defendant's petition was not an abuse of discretion. (*Estes.*) Prebe's evidence was not of so material and controlling a nature that it would probably have altered the result. It was merely cumulative to the substantial impeachment evidence offered by the defendant's counsel.

Accordingly, the decision as supplemented is affirmed and the defendant's petition for rehearing is denied.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.